## JONES v. HAWKINS.

The holder of a claim as collateral security may sue on it, and hold the money when collected in place of the note or evidence of debt, even though the debt on which the collateral security was given is not yet due.

An answer to a suit upon a note held as collateral security, alleging that the note was assigned for the security of the plaintiff and one *A.*, who is not joined as plaintiff, is bad, unless it be averred that the interest of *A.* in the note still existed at the time of the suit.

The word "contract" as used in § 23 of the act to authorize and regulate the business of general banking, (Acts 1855, p. 39,) which provides that "contracts made by such association and all bills," &c. "shall be signed by the president or vice-president, and cashier thereof," is employed in a limited, and not in its broad sense; and does not include a contract of indorsement of a note, which may, according to the usage of banks, be made by the cashier alone.

Where a promissory note is assigned as collateral security for a debt less than the amount of said note, the maker of the note may obtain and have a set-off against the payee to the amount of the excess of the note above the debt on which it was assigned as collateral.

APPEAL from the *Fayette* Common Pleas.

PERKINS, J.—*Hawkins* filed a complaint against *Jones* in

three paragraphs. The first alleged that on *December* 11, 1857, the defendant, *William C. Jones*, executed a written promise to pay *Henry Simpson*, annually, the interest on one thousand dollars ; and that *Simpson* assigned the promise to the plaintiff, *Hawkins*. This paragraph did not make the writing, or a copy of it, a part thereof, by words in the formal part of the paragraph; but, at the close of the complaint, a copy of a writing, such as described in the paragraph, was given, preceded by an explanatory remark, referring back to the paragraph as being founded on the writing copied. .

The second paragraph was for interest on a note in writing, of like tenor with that described in the first paragraph, and was accompanied by a copy of the note. Both of the notes above mentioned were for a period of years, but expressed on their face, " with interest, payable annually." The third paragraph was for interest due on promissory notes, as per bill of particulars filed therewith, but the bill of particulars neither gave copies nor definite descriptions of any notes. This paragraph was bad for want of copies, and for uncertainty. No one of the notes described was payable at a bank. The complaint was not subject to any demurrer on account of any of the objections which were raised to it, as to the first and second paragraphs; and as no evidence was given on the third, the defendant was not injured by it. The defendant answered in three paragraphs.

1. General denial.

2. That the plaintiff held the notes as collateral security, only, and for a liability which had not matured; and that he received them for the security of himself and one *Stout*.

This answer was bad, because the holder of a claim as collateral security may sue on it and hold the money, when collected, in place of the note or other evidence of the debt. The debtor is not harmed. His payment of it, when due, to the then lawful holder, discharges him from the debt.

The answer was bad as to the interest of *Stout*, because it did not aver that his interest existed at the time of the suit; the *prima facie* case was with the plaintiff on the complaint, and copies of notes filed. The Court, however, held the answers good, and the plaintiff took issue of fact upon them.

3. The defendant *Jones* answered by way of set-off, that he, before he had any notice of the assignment of the notes by *Simpson*, the payee, to *Hawkins*, the plaintiff, became the owner, by assignment from the Bank of *Connersville*, of a promissory note for $2,000, made by said *Henry Simpson;* and he averred that said note was assigned to him by the bank, by an indorsement on the back thereof by the cashier of the bank.

An issue of fact was formed on this paragraph. The cause was tried by a jury, and the plaintiff recovered.

The point is made in this Court, that the third paragraph of the answer above set forth is bad, because it does not aver that the indorsement on the note was signed by the president and cashier of the bank.

The bank named is one created under the free banking law of *Indiana*. That law declares (§ 23) that "contracts made by such association, (bank,) and all bills and notes by them issued and put in circulation as money, shall be signed by the president or vice president, and cashier thereof."

It is said that the indorsement of a note is a contract, and therefore must be signed by the president or vice president, and cashier.

We are satisfied that this is not a correct interpretation of the clause of the section of the act quoted. The word contract is there used in a limited, not in its broad sense. This is manifest from the fact, that in its broad sense it includes bills and notes to be circulated as money; hence the naming of those contracts in the act was tautology, if the Legislature understood that they had used the word contract in its broadest sense.

Again; the act says, bills and notes to be circulated as money shall be signed by the president and cashier; plainly implying that bills and notes not to be thus circulated may be executed in a different mode. The act thus construed, will regulate the business of free banks according to the usages and customs of banks generally. With them, notes issued to circulate as money are signed by the president and cashier; others by the cashier alone; but we will not

elaborate this point, as it will be fully illustrated in *Alli-son* v. *Hubbell, post,* p. 559.

On the question of the ownership of the notes sued on by the plaintiff, the defendant had the advantage, on the trial, of a bad answer, over which, nevertheless, the jury found against him; and, upon the evidence, we should be slow in disturbing the judgment below, on this point.

The remaining questions arise upon the note answered as a set-off, and upon instructions, &c. The facts touching the question of the set-off, are these:

On *December* 11, 1857, *William C. Jones* executed to *Henry Simpson* two notes, not governed by the law merchant, for $2,000. On *February* 26, 1858, *Henry Simpson* delivered those two notes to *Amos R. Edwards,* as collateral security for $1,604.23. On *March* 12, 1858, *Edwards* notified *Jones* that he held said two notes as collateral security for the above named sum.

Now what were the interests of these parties in the notes? Why *Jones* the maker, owed on them, $1,604 to *Edwards,* and $396 to *Simpson,* and had a right, under our statute allowing equitable set-offs, to thus apply claims against those individuals, severally, to those respective amounts.

On and after *March* 12, 1858, then, *Jones* had a right to procure and apply a set-off against *Simpson* on said notes to the amount of $396, with the chance of applying a set-off to the full amount of the notes if they were redeemed by *Simpson.*

On *March* 20, 1858, *Jones* did obtain a set-off, being the note set up in the answer as against *Simpson,* to the amount of $2,000. On *May* 18, 1858, *Simpson* redeemed the notes in question, from *Edwards,* and they were redelivered to him.

Here, then, if no other interest intervened, *Jones'* entire set-off would remain as against the notes he had given to *Simpson;* but, under any circumstances, his set-off to the amount of $396 might hold good.

On *March* 10, 1858, *Hawkins* bought the notes on *Jones* of *Simpson,* and while they were yet in the hands of *Edwards;* but they were not delivered to him till after

Nov. Term, 1861.

*Simpson* had redeemed them on *May* 18, 1858, and it is not clear, from the evidence, that the property in them passed till then, and *Jones* was not notified of *Hawkins'* purchase till *December* 30, 1858.

Under any aspect, this case presents, then, *Jones* was entitled to a set-off to the amount claimed by the plaintiff in this suit, it being less than $396. What we have thus said upon the facts, will meet all the questions upon instructions, &c., necessary to be noticed.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*J. C. McIntosh* and *B. F. Claypool*, for the appellant.

*N. Trusler, G. Trusler* and *J. W. Wilson*, for the appellee.