THE PEORIA MARINE AND FIRE INSURANCE CO. *v.* WALSER.

PLEADING—COMPLAINT—DEMURRER.—Where a pleading is founded on a written instrument, the original or a copy must be filed with it; and if the original or a copy is not so filed, the defect may be reached by a demurrer.

PRACTICE.—In order that the Court may know that a written instrument is filed with the pleading, as constituting the foundation of the particular action, it must be identified by reference to it, and making it an exhibit in that pleading.

SAME.—A failure to deny, under oath, the execution of an instrument that does not show an apparent execution on its face, is not an admission of its execution.

SAME—SPECIAL FINDING.—A special finding must be in writing so that an exception may be taken; and it must be filed with the clerk, so that he can enter it, and the exception to it, of record. And as evidence of its genuineness to an appellate Court, it should be signed by the judge, or incorporated in a bill of exceptions signed by him.

ACTION.—A policy of insurance, which has not been executed, will not support an action; but if there was a valid agreement to insure and to issue a policy, an action may be brought upon such agreement.

POLICY OF INSURANCE—EXECUTION OF.—It was necessary to a complete execution of the policy of insurance, in this case, that it should be signed by the President and Secretary, and countersigned by the agent.

MARINE POLICY—COVENANT IN.—Where, in a policy of insurance on a vessel, there is a stipulation "that the master and crew, so soon as practicable after the disaster and the property is secured or recovered, shall repair to the nearest convenient notary, and there make a protest setting forth the cause of said disaster as near as practicable, and the extent of the damage," such stipulation is a binding condition, upon the insured, and must be performed to entitle him to recover.

SAME—EXCUSE FOR NON-PERFORMANCE.—Neither the want of knowl-

The Peoria Marine and Fire Insurance Co. *v.* Walser.

edge of the master and crew that the vessel was insured, nor the casual remark of the agent of the insurance company, before the policy was issued, that if the owner insured he would send him, the master, word, which he failed to do, will excuse the performance of such stipulation.

SAME—WAIVER OF PERFORMANCE.—The simple direction of such agent, to one of the crew, to go before an officer and make a protest, &c., is not a waiver of the legal right of the company to a legal protest in the case.

PRACTICE IN SUPREME COURT—CERTIORARI.—A *certiorari* where the alleged defect does not appear upon the face of the record, and the application alleging it is not verified, will not be granted; nor, as a general rule, after a cause has been decided.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—The appellee sued the appellant upon a complaint in two paragraphs.

The first paragraph avers that on the 11th day of *October*, 1859, the appellee was the owner of a certain flat-boat called the "No. One," lying in the *Ohio* river at the port of *Aurora*, in *Dearborn* county, State of *Indiana*, which was loaded with a cargo of one hundred and forty tons of hay, of the value of 2500 dollars, the property of the appellee; that the boat, so loaded, was properly manned and equipped for a voyage to the port of *New Orleans*, and that afterwards, at that date, at said county and State, the appellant, by *A. Andrews*, her authorized agent for the city of *Aurora*, said county, at the request of the appellee, in consideration of the sum of 126 dollars, paid to the appellant by the appellee, did insure the cargo of said flat-boat in the sum of 2100 dollars, from said port of *Aurora* to said port of *New Orleans*, against the perils of the river, jettisons, enemies, &c., and that said appellant, by her said agent, issued to the appellee a policy of insurance for said risk, which policy is filed with the complaint, and is made part thereof; that said boat and cargo, properly manned

and equipped, on the day and year aforesaid, left the port of *Aurora* for the port of *New Orleans*, and that said boat, with said cargo, manned and equipped as aforesaid, proceeded on said voyage to a place in the *Mississippi* river called *Cypress Bend,* when said boat was wrecked and lost by a peril of the river, to-wit: a very high wind forced and blew said boat upon a snag, whereby she was sunk and her cargo damaged and lost, of which the appellant had due notice on the first day of *December,* 1859, and formal protest was delivered to defendant on the 17th day of *January,* 1860; concluding with an averment of damage in the sum of 3000 dollars; a request to the appellant to pay the amount of the insurance, 2100 dollars; a refusal, and a prayer for judgment.

The second paragraph is substantially the same as the first, with some additional averments; that the length of the boat was about one hundred and twenty feet, and the width eighteen feet; that her rigging consisted of two sets of sweeps, one set of side sweeps consisting of three, and one set of end sweeps consisting of two, called a steering oar and gouger, two good and sufficient wrought iron anchors and gougers, two check posts and one check line one hundred and fifty feet long; that the boat was manned with six competent hands, and *Charles Buffington,* her master and pilot, and that her draught of water was thirty-six inches, and no more; that on said 11th day of *October,* 1859, the appellee applied to the appellant at said port of *Aurora* for said insurance, and that appellant, by said *Andrews,* her agent at said port, examined said boat, cargo, rigging and equipments, and being satisfied therewith, by her agent, issued said policy.

That said snag stove a hole in the side of said boat below the water line, and the boat immediately sank; that the disaster occurred on the 15th day of *November,* 1859, and that the pilot and hands of the boat, with the assistance of the crew of the steamboat *Walsh,* immediately proceeded to save

the cargo, and did save in good condition forty-eight tons, one thousand seven hundred and sixty pounds of hay, in two hundred and fifty-seven bales; and also five tons, eight hundred and sixty pounds of hay, twenty-seven bales, in a damaged condition; being damaged in the sum of fifty per cent. That the residue of the cargo, ninety-five tons, fourteen hundred and eighty pounds, was, by the disaster, totally and wholly lost.

That the master and pilot of the flat-boat immediately shipped the hay so saved to the port of *New Orleans*, on the steamboat *Walsh*, in charge of *Walser*, one of the hands of the flat-boat.

The paragraph sets out the expense of saving, shipping, &c., the hay, amounting to 652 dollars and 22 cents; that the appellant had due notice of the loss, to-wit: on the 1st day of *December*, 1859, and that on the 17th day of *January*, 1860, the appellee caused a protest of the loss to be duly made and delivered to the agent of the appellant at *Aurora, Indiana*, and at the same time delivered the agent an account current of the sales of the hay, and the freight and expenses thereon.

That at the time of the disaster the freight and expense of running said cargo to *New Orleans* had been incurred by the appellee.

Prayer of judgment, &c., &c.

The policy sued on is set out in the record. To the first paragraph of the complaint a demurrer was sustained, and it was amended, and the amended paragraph is set out in the record. It was demurred to upon the ground that it did not state facts sufficient to constitute a cause of action, but the demurrer was overruled and the appellant excepted.

The appellant demurred to the second paragraph of the complaint for the same reason, but the Court overruled the demurrer, and they excepted. The appellant answered in four paragraphs. The first was a general denial.

The second averred that the boat and cargo were not sunk by a peril of the river, as in the complaint stated, but by the negligence and misconduct of the master and crew of the boat.

The third averred that said disaster occurred on the 15th day of *November*, 1859, at *Cypress Bend*, in the *Mississippi* river, and that on the same day the master and crew saved and recovered the property, and shipped on the steamer *Walsh* to the port of *New Orleans*, all that part of the cargo required to be shipped to the port of destination, and on the 15th day of *November* aforesaid, made sale of the wreck.

That on the 17th day of *January*, 1860, *Charles Buffington*, pilot, and *George Collier* and *William Walser*, hands on said flat-boat, went before one *Carter Gazley*, a notary public of said county of *Dearborn*, in the city of *Lawrenceburg* in said county, and entered protest of said disaster.

That said protest was the only protest of said loss made by the pilot and crew of said flat-boat, and that the same was not made as soon as practicable after said disaster and the securing and recovering of the property, but was made more than two months thereafter.

That said *Gazley* was not the nearest convenient magistrate or notary public to the place of the disaster; that said city of *Lawrenceburg* was eight hundred miles distant from the place of disaster, and that at the time of the disaster, there were magistrates and notaries public residing within the States of *Arkansas* and *Mississippi*, where said river forms the boundary line between said States. The protest was filed with the complaint, and made a part of it.

The fourth paragraph avers that on the 11th day of *October*, 1859, the appellee made and delivered the appellant an application in writing, for an insurance on the flat-boat and cargo in the complaint stated.

That in the application, the appellee undertook and war-

ranted, that the number of the crew of said boat should be seven hands besides the pilot; that the said boat should have two anchors, one of one hundred and eight pounds, the other of one hundred and eighteen pounds weight, and should not be laden deeper than thirty-four inches at the bow, and thirty-six inches at the stern.

The appellant avers that at the time of the disaster, the boat had not a crew of seven hands besides the pilot; that she had not two anchors weighing one hundred and eight and one hundred and eighteen pounds respectively, and that she was laden deeper than thirty-four inches at the bow, and thirty-six inches at the stern.

The application is made a part of the answer.

The appellee demurred to the second, third and fourth paragraphs of the answer, because neither stated facts sufficient to constitute a defence.

The Court overruled the demurrer.

The appellee replied in four paragraphs.

The first is a general denial.

To the second a demurrer was sustained, and will not be further noticed.

The third replies to the fourth paragraph of the answer.

That the written application was made out by *Austin Andrews*, the appellant's agent at *Aurora*, upon his own survey and inspection of the boat, the same being then fully laden, and of the furniture, rigging, and equipments of the boat, and the agent specified in the application the size and description of the boat, and of its equipments, the depth to which the boat was laden, and the number of crew upon the boat, according to his own view thereof; that the only contract between the appellee and the appellant, as to the number of hands required on the boat, is that contained in the policy issued by the appellant, after receiving the application, namely: that the boat should have not less than six competent

The Peoria Marine and Fire Insurance Co. *v.* Walser.

hands and a pilot, although it is true that one of the hands, being the cook, who was on the boat at the time of the survey thereof by said agent, did afterwards, before arriving at the place of disaster, without cause and against the will of the master, desert and leave the boat.

Yet there remained and were on the boat, at the time of the disaster, six competent hands, besides the pilot.

That the flat-boat had at the time two anchors weighing, as stated in the application, and that said boat, at the time the said application and survey were written out by the agent and signed by the appellee, was not laden deeper than thirty-four inches at the bow, and thirty-six inches at the stern, and was not, at any time thereafter, laden deeper.

The fourth paragraph replies to the third paragraph of the answer.

It avers that, at the time of making the application, the agent of the company at *Aurora* declined to issue the policy until he could consult with the officers of the appellant at *Peoria, Illinois*, by telegraph, and said flat-boat left *Aurora* upon her voyage before the company had accepted the application, or taken any risk upon said cargo, and said agent promised and undertook to inform said pilot by letter, or otherwise, whether the company had taken the risk upon said cargo. But the agent never sent, nor did the pilot ever receive any such information, and that the pilot and crew were ignorant, at the time of the disaster, that said cargo was insured, and remained ignorant thereof until they arrived at said port of *Aurora*, upon their return from said voyage, when said master, or pilot, immediately called upon said *Andrews*, who directed him to go before *Robert Q. Terrill*, a notary public of said port, and make protest of the loss which had happened to said cargo.

And said master, with two of the crew, *Collyer* and *Boyer*, thereupon called upon said *Terrill*, and requested him to re-

ceive and make out such protest, and did make before said *Terrill* a protest setting forth the cause of said disaster, and the extent of the damage.  But said *Terrill* did not furnish record or written statement of said protest which could be taken for delivery to appellant, saying that he could not do so until he went to *Cincinnati* and got a proper form for such a document.

And *William Walser*, one of said crew, who went to *New Orleans* to make sale of the portion of the cargo that was saved, returned immediately after said sale to *Aurora*, and forthwith went before said *Terrill* to make or join in such protest, said *Andrews* saying that said *Terrill* was the only person who could make out a protest.

The appellee further averred, that he was not upon said flat-boat at any time after the commencement of the voyage; that before *Terrill* had recorded or made out the protest of said pilot and crew, or either of them, the pilot, without the knowledge or consent of appellee, went down the river as pilot upon another flat-boat, the appellee supposing that due and proper protest had been made by him and said crew before said *Terrill*.

That *Lindsay*, one of the crew, resided in the State of *Illinois*, and has never returned to this State since the disaster; that *Lorenzo D. Low*, another of the crew, did not return until the summer of 1860, and that ———— *Roberts*, the other hand, was not within the county of *Dearborn*, to the knowledge of the appellee, until after the bringing of this suit; that as soon as said *Buffington*, pilot, returned after said last mentioned voyage, he and two of said crew made due protest before *Carter Gazley*, notary public, of *Dearborn* county, *Indiana*, setting forth the cause of said disaster, and the extent of the damage, which was delivered to appellant the 17th day of *January*, 1860; that the appellant had due notice of the loss, and the extent of the same long before the making

of said protest, to-wit: "on the 25th day of *November*, 1860."

The appellant demurred to the second, third and fourth paragraphs of the reply. The Court sustained the demurrer to the second, and overruled it as to the third and fourth paragraphs. As to the latter ruling, the appellant excepted.

The cause was submitted to the Court for trial. There was a finding for the appellee in the sum of 1,900 dollars; a motion for a new trial; motion overruled, and a judgment on the finding.

In considering the case, we will first examine the complaint. It is based upon a policy of insurance as constituting the foundation of the action. That policy is described as being in writing.

The code (sec. 78 2 G. & H. 104) provides that: "When any pleading is founded upon a written instrument or an account, the original or a copy thereof must be filed with the pleading."

This defect in pleading may be reached by demurrer. *Woodford* v. *Leavenworth*, 14 Ind. 311; *Price* v. *The Grand Rapids, &c. Co.*, 13 *id.* 58; *Kiser* v. *The State, id.* 80.

It is further settled that, in order that the Court may know that the written instrument is filed with the pleading, as constituting the foundation of the particular action, it must be identified by reference to it, and making it an exhibit in that pleading. *The Indianapolis, &c. Co.* v. *Remmy*, 13 Ind. 518; *Hiatt* v. *Gobelt*, 18 Ind. 494; see *id.* 11 and 156; also, *Price* v. *Grand Rapids, &c., supra.*

The complaint in this case is objected to on the ground just stated, but we think, in this particular, it is substantially sufficient.

The complaint is predicated, as we have said, upon a written policy of insurance, and if the appellee can recover, it is

The Peoria Marine and Fire Insurance Co. v. Walser.

upon the policy which is said to be exhibited. The policy exhibited commences:

"The *Peoria Marine and Fire Insurance Company* do insure, and cause to be insured, lost or not lost, *James Walser*, of *Manchester*, county of *Dearborn*, and State of *Indiana*," &c.

It concludes thus:

"In witness whereof, the President of the said insurance company has hereunto subscribed his name and caused the same to be attested by their Secretary, at their office in *Peoria, Illinois*, this 11th day of *October*, 1859. But the same shall not be valid until countersigned by *A. Andrews*, agent, at *Aurora, Indiana*.                          ————, President.

"————, Secretary.

"Countersigned at *Aurora*, the 11th day of *October*, 1859.
                                   " A. ANDREWS, Agent.

No. 11. "*Peoria Marine and Fire Insurance Company, Peoria, Illinois; James Walser, Manchester, Indiana:*

FLAT BOAT CARGO POLICY.

| | | |
|---|---|---|
| Amount insured.. .............................................. | $2,100 | 00 |
| Rate per cent.................................................... | 6 | 00 |
| Cash premium ................................................... | 126 | 00 |
| Policy .............................................................. | 1 | 00 |

"A. ANDREWS, Agent, *Aurora, Indiana.*"

The policy exhibited was not signed by the president, or attested by the secretary, and the signing and attestation are by the policy declared to be the evidence of execution by the company.

It is claimed that the policy is inoperative because it is not executed by the company. If, in fact, the policy upon which the complaint is founded has not been executed by the company, it will not support an action, and the suit should

have been upon the agreement to insure, and to issue a policy, if such a valid agreement existed. *Kentucky Mutual, &c. Co.* v. *Jenks,* 5 Ind. 96.

At common law, a parol contract for insurance, is valid. *Commercial Mutual, &c. Co.* v. *Union Mutual, &c. Co.,* 19 How. (U. S.) Rep. 318.

See as to whether both parties are bound where a contract within the statute of frauds is reduced to writing and signed by one party only, *Smith* v. *Smith,* 8 Blackf. 208; also, 20 Ind. 19. A contract for insurance is not within the statute of frauds of *Indiana.*

But the suit, in this case, as has been said, is not upon an agreement for a policy, but upon what is claimed to be a policy executed by the company. Does it appear to be such? No part of the charter of the company appears in the record; nor is there any thing showing the extent of the powers of *Andrews,* the agent who countersigned the policy. We labor, therefore, under disadvantages, in examining the questions argued by counsel.

It seems to us that the policy sued on, so far as the complaint shows, is but a partially executed instrument, and is, therefore, invalid. It would seem that, to a complete execution of the policy, it was necessary that it should be signed by the president and secretary of the company, and countersigned by the agent. The policy in question is not signed by the president and secretary. It is only countersigned by the agent. How does it differ from the case of a promissory note, not signed by the principal, but only witnessed by an agent? See *Lynn* v. *Burgoyne,* 13 B. Monroe, 400; *Perry* v. *The Newcastle, &c. Co.,* 8 (U. C.) Q. B. Rep. 363; *Daniels* v. *The Hudson, &c., Ins. Co.,* 12 Cush. 416; *Jones* v. *Hawkins,* 17 Ind. 550; *Allison* v. *Hubbell, id.* 559.

And it may be observed that a failure to deny under oath the execution of an instrument that does not show an appa-

rent execution on its face, is not an admission of its execution.

Another question arises on the overruling of the demurrer to the fourth paragraph of the reply to the third paragraph of the answer, touching protest of the disaster to the insured cargo. It is an implied obligation on the part of the owner of an insured vessel that, if possible, it shall be kept seaworthy, including, under that term, a sufficient crew to manage it. Sometimes express stipulations touching some points on this subject are inserted in the policy of insurance, and thus made matter of express contract; for a policy of insurance is simply a contract between parties, to be lived up to, or broken, and the consequences of breach incurred, as in cases of other contracts.

In the case at bar the policy stipulated that the crew should not be less than six hands and a pilot, and there were that number on board at the time of the disaster. The policy also contained the stipulation, that "the master and crew, so soon as practicable after the disaster, and the property is secured or recovered, shall repair to the nearest convenient magistrate or notary and there make a protest setting forth the cause of said disaster as near as practicable, and the extent of the damage." The loss occurred twenty-five miles below *Napoleon* on the *Mississippi* river. These executory stipulations became binding conditions upon the insured and must be performed, to entitle him to recover, whether the thing stipulated be material or not. *Grant* against *The Lexington Ins. Co.*, 5 Ind. 23; 3 Kent., 6 ed. 376; 5 Ind. 417.

Here, then, by contract, there were to be—

1. A protest of loss,

2. To be made as soon as practicable after the loss,

3. "By the master and crew,"

4. Before the nearest convenient magistrate or notary.

This stipulation, to be performed on the part of the in-

sured, was not performed. Is sufficient excuse shown? It is a general proposition that performance of covenants will not be excused, by the inconvenience, difficulty, or even impossibility of their performance. *Harmony* v. *Bingham*, 2 Kernan 99; *Oakley* v. *Morton*, 1 Kernan 25; 2 Parsons on Cont. 182, foot, (4th ed.); *Brecknock Co.* v. *Pritchard*, 6 Term R. 750; *Atkinson* v. *Ritchie*, 10 East 530; *Gilpins* v. *Consequa*, Pet. C. C. 86; Story on Cont., § 975 (3d ed.); *Beebee* v. *Johnson*, 19 Wend. 500; Chitty on Cont. 734; *Medeiras* v. *Hill*, 8 Bing. 231; S. C., 21 Eng. Com. Law R. 519.

The excuse here given is that the master and crew did not know that the boat was insured; but it was the fault of the plaintiff that they did not. The company did not waive this to the plaintiff, and the casual remark of the agent to the master before the policy was issued, that if the plaintiff insured he would send him, the master, word, amounted to nothing. That was no part of the contract. There was no consideration for it, nor does it appear that it was ever communicated to the plaintiff, the insured party. Nor, as a fact, was the simple direction of the agent to one of the crew to go before an officer and make a protest, a waiver of the legal rights of the company to a legal protest in the case; *Byrne* v. *The Rising Sun Ins. Co.*, 20 Ind. 103; even if the agent had the power to make such waiver, which does not appear. *Connover* v. *The Mutual, &c. Co.*, 2 Pet. (U. S.) Rep. 25; *Dawes* v. *North River Ins. Co.*, 7 Cow. 462; 22 Barbour (N. Y.) Rep. 527; 4 Kernan 418; 1 Comstock 290; 3 Wood. & Minot 529; 1 Hoffman (Chy.) Rep. 172; 1 Greene (N. J.) Rep. 110.

Another point is made. The *Peoria, &c. Co.*, is a foreign corporation, and can issue valid policies of insurance in this State only after having complied with certain conditions. This was decided in the case of *The Rising Sun Insurance* v. *Slaughter*, 20 Ind. 520, and a like ruling has been made in other States. *Jones* v. *Smith*, 3 Gray 500; *Washington Insurance*

*Co.* v. *Dawes*, 6 Gray 376; *General Mutual Fire Insurance Co.* v. *Philips*, 13 Gray 90; *Washington Insurance Co.* v. *Hastings*, 2 Allen 398; *Williams* v. *Chenay*, 8 Gray 206; *Ætna Insurance Co.* v. *Harvey*, 11 Wis. 394. And it is contended that, in a suit by either party, on such contract, the complaint should aver that such conditions had been complied with.

In the case of *Williams* v. *The Insurance Company of North America*, 9 How. Prac. 365, the rule is stated thus: "When a statute declares that a deed or contract is void, if, or provided, it is made in a particular manner, or upon a specified consideration—e. g., upon usury—it is not necessary for the plaintiff to negative the condition; he may leave it to the defendant to set up the facts which bring it within the condition upon which, and upon which alone, it is void. But when a statute makes a deed, or agreement, or other act void, unless made upon a specified consideration, or under specified circumstances, the rule is reversed; the plaintiff must show that the circumstances exist under which alone it can have validity; the defendant, in such case, may rest upon the general prohibition."

This case is cited with approval, and its language adopted by *Mr. Sedgwick.* Sedgwick's Stat. and Cons. Law, p. 117. See, also, *Devendorf* v. *Beardsley,* 23 Barb. 657; *Hatch* v. *Peet, id.* 575; *Otis* v. *Harrison,* 36 Barb. 210; *Williams* v. *Babcock,* 25 Barb. 110; *Savage* v. *Medbury,* 5 Smith (19 N. Y.) 32; *Mahony* v. *Gunter,* 10 Abbott's P. R. 431. See, also, *Jones* v. *The Cincinnati, &c. Co.,* 6 Am. L. Reg. p. 718. We express no opinion on this point.

Another question is raised. It is insisted that the special finding of the Court is not properly a part of the record, for the reason that it was not signed by the judge, or ordered to be made part of the record. *Brutton* v. *Ferguson,* 11 Ind. 314, is cited.

We think this position is correct. A special finding must

The Peoria Marine and Fire Insurance Co. v. Walser.

be in writing so that an exception may be taken, and it must be filed with the clerk so that he can enter the special finding, and the exception to it, of record. And, as evidence of its genuineness to the appellate Court, it should be signed by the judge, or incorporated in a bill of exceptions signed by him. We think, when it is signed and filed, it may be regarded as one of the papers in the cause, under the reasoning, and within the spirit of the examples of such given in *Matlock* v. *Todd*, 19 Ind. 130. The pleadings in the cause are a part of the record, and they are signed by the counsel respectively. Verdicts are signed; instructions of the Court, made a part of the record, are signed; motions for new trial are signed. Signature is evidence of genuineness and authenticity.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.*

*There was filed herein a petition for a rehearing, by the appellee, containing also an application for a *certiorari*, which was overruled by the Court, and thereupon the following additional opinion was rendered by—

PERKINS, J.—A petition for a rehearing has been filed in this cause, containing also an application for a *certiorari*.

There are two objections to granting a *certiorari*:

1. The alleged defect in the record does not appear upon its face, and the application alleging it is not verified.

2. It is too late to apply for a *certiorari*, certainly as a general rule, after a cause has been decided. 12 Ind. 116; Davis' Dig., tit. Certiorari.

Marine policies do not usually contain as particular stipulations as the present on the subject of protests, &c., but where they do, the contract must control. See 3 Sand. (N. Y.) Rep. 36; *Morrell* v. *Irving, &c. Ins. Co.*, 3 Am. L. Reg. (N. S.) 404; *The Peoria, &c. Co.* v. *Hall, id.* 417.

_Quære_, as to this latter case. Is there not a question as to how far notice to the agent of a fact, if it was not in his power to waive it, could bind the company?

The petition for a rehearing is overruled.

_Thomas A. Hendricks_ and _Oscar B. Hord,_ for the appellant.

_Daniel S. Major,_ for the appellee.