THE BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY *v.* REYNOLDS.

PRACTICE.—*Special Finding.*—Where what purports to be a special finding made by the court does not appear to have been made at the request of either party, and is not signed by the judge, and does not state any conclusions of law, it can only be regarded as a general finding.

SAME.—*Prayer.—Striking Out.*—It is not error to strike out a part of the prayer of a complaint, when sufficient remains to authorize the court to give the plaintiff any relief to which he may be entitled under the facts charged.

SAME.—*Extent of Relief.*—When the defendant has answered, any relief may be granted consistent with the case made by the complaint.

CORPORATION.—*Relation of Officer to Stockholder.*—The president of a railroad company, who was also one of its directors, having knowledge, by reason of his official position, that the true value of the stock of the company, was very largely in excess of its nominal market value, purchased, at much less than its real worth, the stock of a non-official stockholder, who was ignorant of the company's financial condition and of facts giving an extraordinary value to the stock, without disclosing to the seller the facts and circumstances within his knowledge as to its real value.

*Held* (DOWNEY, C. J., dissenting), that the relation of trustee and *cestui que trust* did not exist between the parties, and that in the absence of actual fraud the purchase was valid. The purchaser was not bound to communicate to the seller his knowledge of the worth of the stock; although the same was obtained by reason of his official relation to the company, nor was the purchaser required, in order to make a valid purchase, to pay a fair and adequate price for the stock.

SAME.—*Officer.—Trust.*—The doctrine that the directors of a corporation are trustees for the stockholders has relation only to the acts of the directors in connection with the property held by the corporation itself and to their management of its business.

From the White Circuit Court.

*J. M. LaRue, Z. Baird, S. P. Baird, J. A. Stein,* and *F. B. Everett,* for appellant.

*R. Jones, J. E. McDonald, A. L. Roache, J. M. Butler, E. M. McDonald, S. A. Huff,* and *B. W. Langdon,* for appellee.

WORDEN, J.—This was an action by the appellant against the appellee, commenced in the Tippecanoe Circuit Court, and transferred on change of venue to the White Circuit Court.

There were two paragraphs in the complaint, but for the purposes of this decision, they need not be separately considered.

The facts in the case as alleged are, in substance, as follow:

The county of Tippecanoe was the owner of five hundred and seventy paid up shares of the capital stock of the Lafayette and Indianapolis Railroad Company, of fifty dollars each, amounting to twenty-eight thousand five hundred dollars; that on June 24th, 1865, the total amount of the stock of the company was only two hundred and fifty thousand dollars; that the road had been built mainly from the proceeds of bonds sold, and had, by its earnings, paid off the bonded debt, and also, that the floating debt was paid, or means accumulated and on hand with which to pay it; that the stock owned by the county was, at that time, worth three hundred and forty-two thousand dollars; that the defendant was the president of the company and the principal manager of its affairs; that the condition of the company had been concealed by the defendant, by failing to declare dividends, and by representations that the stock was not worth its face, and by failing to show the condition of the affairs of the company; that the plaintiffs were ignorant of the value of the stock, which the defendant knew; that he represented that the depreciation of the value of the stock had been caused by losses sustained by the company, when he knew that the accumulations of the company were sufficient to pay all debts and losses and leave the stock eleven hundred per cent. above par; that, under these circumstances, the defendant, through his agent, Moses Fowler, who was also a director of the company, purchased the stock of the county, on said 24th day of June, 1865, for the sum of twenty-five thousand six hundred and fifty dollars, being ninety cents on the dollar, and had it transferred to one Wilson, to hold as his trustee; that the defendant was then negotiating to sell the road to the Indianapolis and Cincinnati Railroad Company, and afterward did sell it for two million five hundred thousand dollars, secured by first mortgage bonds on the road from Lafayette to Indianapolis, with a further lien on the Indianapolis and Cincinnati road.

Prayer for judgment for three hundred and fifteen thousand three hundred and fifty dollars, in different forms, and for general relief.

Moses Fowler was originally made a defendant, but as to him the action was dismissed.

Reynolds answered by general denial, and the cause was tried by the court, who made what purported to be a special finding, but which can only be regarded as a general finding, it not appearing to have been made at the request of either party, and not being signed by the judge, and no conclusions of law being stated. The plaintiff moved for a new trial, because,

" 1st. The finding is contrary to law.

" 2d. It is not supported by sufficient evidence."

The court overruled this motion, and the plaintiff excepted. Final judgment was then rendered for the defendant on the finding.

Several errors are assigned, but only three of them are presented and relied upon.

1st. The striking out of a part of the prayer of the complaint.

2d. Overruling the motion for judgment on the special finding.

3d. Overruling the motion for a new trial.

As to the first point made, we think the prayer of the complaint, after striking out the part referred to in the motion, was sufficient to authorize the court to give the plaintiff any relief to which he might be entitled under the facts alleged. There was a prayer for judgment for a specific amount, and for general relief. It is decided that when the defendant answers, any relief may be granted consistent with the case made by the complaint. *Mandlove* v. *Lewis*, 9 Ind. 194; *Resor* v. *Resor*, 9 Ind. 347.

With regard to the second point, we have already seen that the special finding was not made at the request of either party, was not signed by the judge, contains no conclusions

tions. We can, therefore, only regard it as a general finding for the defendant, inasmuch as the court rendered judgment upon it for the defendant. *The Peoria, etc., Co.* v. *Walser,* 22 Ind. 73; *Smith* v. *Jeffries,* 25 Ind. 376; *Davis* v. *Franklin,* 25 Ind. 407.

The merits of the entire case, however, arise upon the question involved in the overruling of the motion for a new trial, which we now proceed to consider, the evidence being in the record.

We may remark here, that we have had the benefit of full and able argument on both sides, both oral and written, by which our labors have been lightened, and we have been greatly assisted in arriving at our conclusions in the case. We have carefully considered the evidence in the cause, and are satisfied that no actual fraud was established in the purchase of the stock by the defendant from the plaintiff. The defendant, doubtless, knew much more about the condition of the affairs of the company and the value of the stock, both present and prospective, than the plaintiff. He purchased the stock greatly below its real value, as subsequent events established, but he paid the market value at the time, so far as it seems to have had a market value. Had the defendant not been connected with the company as one of its officers, there is nothing in the case that would furnish any reasonable ground to claim that the purchase was, in any manner, infected with fraud. It is not shown by the evidence that there was any special trust or confidence reposed in the defendant by the plaintiff, which was violated by the former, or of which he took advantage. These are the conclusions at which we arrive from the evidence, which is quite voluminous and cannot be set out without extending this opinion to an inadmissible length. It is very clear, according to the well established practice of the court, that we cannot disturb the finding of the court below on the ground of actual fraud. Some other element must enter into the case, in order to justify us in disturbing the finding. This brings us to the question which has been chiefly argued by counsel, viz.:

The Board of Commissioners of Tippecanoe Co. *v*. Reynolds.

Was the defendant, in consequence of being a director and the president of the company, a trustee of the plaintiff as a stockholder, whereby it became his duty, as a purchaser of the stock, to pay a fair and adequate price for it, to take no advantage of the relation which he bore to the company or the knowledge acquired thereby, and to disclose to the plaintiff all the material facts within his knowledge, not known to the plaintiff, affecting the value of the stock?

We are of opinion, upon an examination of such authorities as have been brought to our notice, upon the point, that the relation of trustee and *cestui que trust* does not exist in such case. It is said very frequently in the books that the directors of a corporation are trustees of the stockholders, and that the relation of trustee and *cestui que trust*, with its consequences, exists between them. But these expressions must always be understood to have relation to the cases to which they are applied, and not to be of universal application. It may be conceded that, in respect to the property of the corporation, whether it be land, money, securities, capital stock, or other property held by the corporation, and the management of its business, the directors are trustees for the stockholders. The action of the directors in respect to the property of the corporation must affect, to a greater or less degree, the stockholders generally. It has been generally in such cases, or where the action of the directors has affected the whole body of stockholders, that the relation of trustee and *cestui que trust* has been held to exist. In a late case in Pennsylvania, *Spering's Appeal*, 71 Penn. St. 11, 20, SHARSWOOD, J., in delivering the opinion of the court, says: "It is by no means a well settled point what is the precise relation which directors sustain to stockholders. They are undoubtedly said in many authorities to be trustees, but that as I apprehend is only in a general sense, as we term an agent or any bailee intrusted with the care and management of the property of another. It is certain that they are not technical trustees."

VOL. XLIV.—33.

To show the diversity of language employed in different cases and the necessity of keeping in view the case to which it is applied, we make a short extract from the case of *Smith* v. *Hurd*, 12 Met. 371. It was an action on the case at common law, brought by an individual holder of shares in an incorporated bank against the directors, setting forth various acts of negligence and malefeasance through a series of years, in consequence of which, as the declaration alleged, the whole capital of the bank was wasted and lost, and the shares of the plaintiff became of no value.

SHAW, C. J., in delivering the opinion of the court, said: "There is no legal privity, relation, or immediate connection, between the holders of shares in a bank, in their individual capacity, on the one side, and the directors of the bank on the other. The directors are not the bailees, the factors, agents or trustees of such individual stockholders." It was held that the action could not be maintained.

A similar decision was made in the case of *Allen* v. *Curtis*, 26 Conn. 456. ELLSWORTH, J., in pronouncing the decision of the court, said: " Besides, the directors of the bank are the agents of the bank. The bank is the only principal, and there is no such trust for, or relation to, a stockholder as has been claimed by the plaintiff. The entire duty of the directors, growing out of their agency, is owed to the bank, which, under the charter, is the sole representative of the stockholders, and the legal protector and defender of their property."

It seems to us, however, keeping in view the current of authorities, that notwithstanding the general language employed in the above cases, for some purposes, the directors of a corporation stand in a relation similar to that of trustees for the shareholders. This seems to be the case in reference to the management, by the directors, of the property and general affairs of the corporation. These are matters usually entrusted to the directors, and in respect to which they are empowered to act; and their action affects the whole body of shareholders, beneficially or injuriously,

in respect to dividends upon, or the value of, their stock.

But stock in a corporation held by an individual is his own private property, which he may sell or dispose of as he sees proper, and over which neither the corporation nor its officers have any control. It is the subject of daily commerce and is bought and sold in market like any other marketable commodity. The directors have no control or dominion over it whatever or duty to discharge in reference to its sale and transfer, unless it be to see that proper books and facilities are furnished for that purpose. As the property of the individual holder, he holds it as free from the dominion and control of the directors, as he does his lands or other property. This view is very well illustrated by what was said in the case of *Van Allen* v. *The Assessors*, 3 Wal. 573, in which it was held that shares in the national banks might be taxed by the states. Mr. Justice NELSON in delivering the opinion of the court, p. 583, said: "But, in addition to this view, the tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. This is familiar law, and will be found in every work that may be opened on the subject of corporations. A striking exemplification may be seen in the case of *The Queen* v. *Arnaud*, 9 A. & E., N. S. 806. The question related to the registry of a ship owned by a corporation. Lord DENMAN observed: 'It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners.'

"The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion

to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. · This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to taxation by the states," etc.

Such being the nature of the interest of the stockholder in his stock, and the directors having no control, power, or dominion over it or duty to discharge in reference to it, beyond the duty devolving upon them to prudently manage the affairs and property of the corporation itself, it seems to us to be very clear, that, in the purchase of stock by a director from the holder, the relation of trustee and *cestui que trust* does not exist between them.

The case of *Carpenter* v. *Danforth*, 52 Barb. 581, a very well considered case, is directly in point. There, Danforth, who was one of the trustees or directors of the corporation, purchased of the plaintiff one hundred and thirty-six shares of the stock of The National Bank Note Company; and the purpose of the action was to have the sale declared void, and to have the plaintiff restored to the rights and interests which he would have had if the sale had not been made, upon the ground of fraud and undue influence. It was held that the relation of trustee and *cestui que trust* did not exist.

Many cases have been cited, in which it has been said that the directors of a corporation are trustees for the stockholders, but it has been said generally, if not always, with reference to the management, by the directors, of the property or business of the corporation itself. We proceed to notice the cases.

The case of *Robinson* v. *Smith*, 3 Paige, 222, has no analogy to this. It was there held that the directors of a joint stock corporation, who wilfully abuse their trust or misapply the funds of the company, by which a loss is sustained, are personally liable as trustees to make good that loss; and they are also liable, if they suffer the corporate funds to be lost

or wasted by gross negligence and inattention to the duties of their trust.

In *Verplank* v. *The Mercantile Ins. Co.*, 1 Edw. Ch. 84, it was held that when a corporation aggregate is formed, and the management and control of its affairs are in the hands of directors, the latter become the agents and trustees of the corporators, and a relation is created between the stockholders and those directors, who, as trustees, become accountable for dereliction of duty and violation of trust. The case made by the allegations of the bill was, that the directors had violated the act of incorporation by granting life annuities, without having set apart or appropriated any portion of the capital as an annuity fund, by buying and selling goods, wares, and merchandise, it being declared unlawful for the company to deal, use, or employ any part of their stock, funds, or money in such business, and in buying and selling, or investing their money in stock or funded debt.

The case of *Scott* v. *Depeyster*, in the same volume, p. 513, is thus stated by the Vice-Chancellor, p. 527 : " This is a bill by one of the stockholders of the National Insurance Company, in behalf of himself and all others who may come in and contribute to the expenses of the suit, against the president and directors of the same company, in their individual capacities, to compel them, personally, to account for and make good the losses sustained in the capital stock of the company by the frauds and embezzlements of their secretary."

The statement of the case is sufficient to show that it has no bearing upon the question involved here.

In the case of *The Cumberland Coal, etc., Co.* v. *Sherman*, 30 Barb. 553, it was held that a director of a corporation is the agent or trustee of the stockholders, and as such has duties to discharge, of a fiduciary nature, toward his principal, and is subject to the obligations and disabilities incident to that relation. This was held in reference to a sale of the property of the corporation, the case having no similarity to the one before us.

In *Butts* v. *Woods*, 38 Barb. 181, the relationship of trustee and *cestui que trust* is again asserted, but is, in this instance, applied to the payment, by the directors, of the funds of the corporation to an individual upon a pretended claim, which they knew, or must be presumed to have known, was unfounded.

One more case from New York closes our citations from that state. *Bliss* v. *Matteson*, 45 N. Y. 22. The following point taken from the syllabus will sufficiently show the nature of the case: "The directors of a corporation are trustees of its stockholders, and in a certain sense, of its creditors, and any agreement to influence the action of such directors for the benefit of others, and to the prejudice of the company is void."

*The Bedford Railroad Co.* v. *Bowser*, 48 Penn. St. 29, decides, also, that the directors of a railroad company are trustees for all the stockholders. We cannot make a more condensed statement of the case to which it was applied than by quoting the following paragraph from the syllabus: "Where a board of directors of a railroad company, after reciting a condition attached to certain subscriptions by the commissioners, resolved that the condition be adopted as the act of the company; that the stock of each subscriber be purchased by the company, and the payment of the subscription assumed; that the stock be surrendered, subscription annulled and cancelled by the secretary: such action on the part of the board was irregular and unauthorized, and the cancellation of the subscription in accordance therewith invalid; and it was error on the part of the court to instruct the jury that if the company had assets sufficient to pay their debts, the cancellation was valid, and released the subscribers, of whom the defendant was one." This case, it will be seen, has no features in common with that under consideration.

In *Bayless* v. *Orne*, Freeman Miss. 161, the trust relationship is asserted and applied to the case of an abuse of

their trust by the directors, or waste or misapplication of the funds of the company.

The case of *Hodges* v. *New England Screw Co.*, 1 R. I. 312, holds that the directors of a corporation are liable in equity for a fraudulent breach of trust. The fraud charged related to the management of the business and affairs of the corporation, viz.: " That they took the stock in the Iron Company on account of the Screw Company, before two hundred shares had been *bona fide* subscribed for; that they and the officers concealed important transactions and papers from the plaintiff, and refused him access to the same; that they paid more than the market price for the rods furnished them by the Iron Company; that they had violated the by-laws of the company; that the business and profits of the company had been diminished by diverting the time and care of its officers to the concerns of the Iron Company, the officers and agents of one company being likewise officers and agents in the other, and that they had managed the concerns of the two companies with a view to reduce the value of the plaintiff's stock, in order to force him to sell it to them at a greatly diminished price, and retire from the company." In this case it is clear enough, according to the charges, that the directors might justly be regarded as the trustees of the stockholders, because the wrong charged was all done in the management of the business and affairs of the corporation. The case, however, is totally unlike the one under consideration.

*European, etc., Railway Co.* v. *Poor*, 59 Maine, 277, holds that if a director of a railroad corporation enter into a contract for the construction of the road of his corporation, he cannot then, nor subsequently, personally derive any benefit from such contract. This we recognize as good law, but it needs no argument to show that it has no application to the case before us.

The case of *Dodge* v. *Woolsey*, 18 How. 331, involves questions entirely foreign to that under consideration here. Dodge was the owner of thirty shares in the Commercial

Branch Bank of Cleveland, and he filed a bill in the circuit court of the United States for the district of Ohio, against the bank, the directors, and the tax collector, to enjoin the collection of a tax assessed by the State of Ohio on the bank, upon the ground stated in his bill. The circuit court enjoined the collection of the tax, and the judgment was affirmed.

The case of *Koehler* v. *The Black River Falls Iron Co.*, 2 Black, 715, was a bill in chancery to foreclose a mortgage purporting to have been executed by the company, to secure the payment of fifteen thousand dollars. The bill, upon the hearing, was dismissed. The decree was affirmed upon two grounds:

1. That the corporate seal was wrongfully affixed to the mortgage.

2. That the mortgage had been unjustly obtained, in this: Two of the nominal mortgagees were directors of the company; the company was embarrassed and desired to borrow money; at a meeting of the stockholders, a resolution was passed authorizing the directors to obtain as large a loan as they could, and secure the same by mortgage on the lands and works of the company. One thousand two hundred dollars in money, and eight hundred dollars in provisions, were received by the company, and for the residue the mortgagees assumed the payment of several debts due from the company, in which they, or some of them, were interested. The court say : " Instead of honestly endeavoring to effect a loan of money, advantageously, for the benefit of the corporation, these directors, in violation of their duty, and in betrayal of their trust, secured their own debts, to the injury of the stockholders and creditors. Directors cannot thus deal with the important interests entrusted to their management. They hold a place of trust, and by accepting the trust are obliged to execute it with fidelity, not for their own benefit, but for the common benefit of the stockholders. In executing this mortgage, and thereby securing to themselves advantages which were not common to all the stock-

holders, they were guilty of an unauthorized act, and violated a plain principle of equity applicable to trustees. 'The directors are the trustees or managing partners, and the stockholders are the *cestuis que trust*, and have a joint interest in all the property and effects of the corporation, and no injury that the stockholders may sustain by a fraudulent breach of trust can, upon the general principles of equity, be suffered to pass without a remedy.'" This is another case in which the wrong imputed to the directors had reference to their management of the affairs of the company.

We now turn to the English cases. A leading one is that of *The York and North Midland Railway Company* v. *Hudson*, 19 Eng. L. & Eq. 361. The corporation in that case had been chartered in the reign of William IV. Subsequently, in the reign of Victoria, an act of Parliament was passed authorizing the formation of new lines of railway and the increase of the capital stock of the company. Accordingly, the stock was increased fifty thousand shares. Of these shares, thirty-seven thousand nine hundred and fifty were divided among the original stockholders; and the residue, amounting to twelve thousand and fifty, were to be left at the disposal of the directors. The relief sought in the case related only to a portion of the shares so left at the disposal of the directors. The number of shares in respect to which relief was sought was five thousand two hundred and fifty-nine. These shares had been sold by Hudson, who was chairman of the company, at a premium; and the object of the suit was to compel him to account for the profit he thus made on the sale of the shares. With reference to the case made, the Master of the Rolls said: "The directors are persons selected to manage the affairs of the company for the benefit of the shareholders. It is an office of trust, which if they undertake, it is their duty to perform fully and entirely. A resolution by the shareholders, therefore, that shares or any other species of property should be at the disposal of the directors, is a resolution that it shall be at the disposal of trustees, in other

words, that the persons intrusted with that property shall dispose of it within the scope of the functions delegated to them in the manner best suited to benefit their *cestuis que trust.*" This was the case of the disposal of the property of the corporation by a director, for his own benefit. It has no bearing whatever upon the question involved here.

In *The Great Luxembourg Railway Company* v. *Magnay*, 25 Beav. 586, a railway company had furnished a director with a large sum of money to enable him to purchase the " concession" of another line. He purchased it, as it turned out, from himself, he being the concealed owner of it. It was held that the transaction could not stand.

In *Ex parte Bennett*, 18 Beav. 339, the directors permitted a class of dissentient shareholders in an embarrassed company to transfer their shares to the company, under a power in the deed, upon payment of a sum of money, which it was arranged should be paid to one of the directors in discharge of a debt due from the company. Held, that the transaction was void, and, on the winding up of the company, that the dissentients still remained shareholders. The relation of trustee and *cestui que trust* is assumed in the case. The case was put upon the ground that the director had obtained an undue advantage in securing the payment of his debt from an embarrassed company.

The next and last case is that of *Walsham* v. *Stainton*, 1 De G. J. & S. Ch. 678. We cannot state this case in a more concise manner than by transcribing the syllabus :

" Joseph Stainton and Henry Stainton, who were confidential agents of a company, conspired together to depress the selling price of the shares by a system of false accounts and concealment, in order that they might purchase them at an undervalue. By reason of this scheme, fifty-five shares belonging to Garbett were sold much below their real value, fifteen to Joseph Stainton and forty to Henry Stainton. The executor of Garbett, upon discovering the frauds which had been practised, filed his bill against the executor of

Joseph Stainton and the executors of Henry Stainton for relief in respect of all the shares. The representative of Joseph Stainton demurred for want of equity and multifariousness: *Held*, that although Joseph Stainton derived no benefit from the sale of the forty shares at an undervalue, yet, as he stood in a fiduciary position towards the shareholders, and was a party to the fraud, he, as well as Henry Stainton, was liable to Garbett for the real value of the shares, and that his executor was a proper party to a suit in respect of them: *Held*, also, that as both sales were affected by the same fraud, it was not multifarious to combine the cases as to the fifteen and the forty shares in the same bill."

In this case, there was not only actual fraud on the part of the Staintons, but that fraud, whether committed as agents or officers of the company, consisted of fraudulent acts committed by them in their management of the affairs of the company, whereby the apparent value of the shares was depreciated.

The case states that Joseph Stainton was manager of the company at Carron from 1786 to his death in 1825, and his brother Henry Stainton was London agent of the company from 1808 till his death in 1851. The fraud charged was, that Joseph Stainton entered on the books of the company large quantities of goods sold to the Board of Ordnance at prices much less than those actually paid, and invested the difference in his own name in government stock. This was carried on with the help of Henry Stainton, as manager in London. This fraud, called in the bill, "the secret service fraud," amounted in 1808 to eighty thousand pounds, and in 1816 to one hundred and twenty thousand pounds sterling. The existence of this fraud was not noticed in the books of the company, nor was it known to any member of the company other than the Staintons and the Dawsons, until the year 1852; but after that date its existence was discovered, and it was subsequently paid or accounted for to the company. The case, in addition to the fact of actual

fraud, falls within the recognized class where the relation of trustee and *cestui que trust* exists.

We have thus noticed all the cases that have been cited upon the question involved. None of them conflict with that of *Carpenter* v. *Danforth, supra,* or with the conclusion at which we have arrived as hereinbefore stated. They are all cases in which the acts of the directors, in respect to which they were held to be trustees of the stockholders, had relation to the property or to the business of the corporation. Such is not the case here.

The judgment below is affirmed, with costs.

DOWNEY, C. J.—In my opinion, the evidence in the record in this case shows that the appellee was guilty of actual fraud in his purchase of the stock of the county in the railroad of which he was a director and the president.

If this were not so, I am clearly of the opinion that he occupied a relation of trust and confidence toward the county, which, under the circumstances disclosed, made him guilty of constructive fraud.

I regard the contract obtained from the county commissioners by the appellee as hard, unconscionable, and fraudulent in either view of it, and am therefore of the opinion that the judgment of the circuit court should be reversed.

*Petition for a rehearing overruled.*