CASE 56—PETITION EQUITY—FEBRUARY 3.

# Lusk vs. Hopper, trustee, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

1.  As the vendor had not conveyed the land, his lien was not extinguished by renewing the note or notes for the unpaid part of the purchase money, with personal security. (*Rennick vs. Hendricks*, 4 *Bibb*, 303; *Honore's ex'r vs. Bakewell*, &c., 6 *B. Mon.*, 67.)
2.  Although the surety cannot be subrogated to the rights and lien on the land of the creditor until he has paid the debt, as the suit was in equity, it was proper that the chancellor should have enforced the lien to save a multiplicity of suits, and especially as both the surety and creditor asked that it should be done.

M. C. JOHNSON and
JOHN B. HUSTON,                              For Appellant,
                    CITED—
    4 *Littell*, 289–317; 5 *Mon.*, 287.
    2 *Dana*, 99; 6 *B. Mon.*, 71.
    8 *B. Mon.*, 468; 4 *Bibb*, 303.
    3 *B. Mon.*, 50; *Burk vs. Chrisman.*
    4 *B. Mon.*, 413; *Dawson vs. Mitchell.*
    3 *B. Mon.*, 452; *Broadus vs. King.*
    10 *B. Mon.*, 281.

GEO. W. DUNLAP,                              For Hopper,
                    CITED—
    3 *B. Mon.*, 50; *Burk vs. Chrisman.*

JAS. A. ANDERSON,                           For Hopper, &c.
                    CITED—
    7 *Mon.*, 574; *Hanson vs. Cowan.*
    2 *J. J. M.*, 38; *Harlan vs. Wingate's adm'r.*
    4 *J. J. M.*, 3; *Castleman vs. Holmes.*
    1 *Dana*, 53; *Letcher vs. Bank of Commonwealth.*

Lusk vs. Hopper, trustee, &c.

S. Turner,                                    For A. Lusk's trustee.

Dunlap,                                       For Pearl's adm'r.

CITED—

Civil Code, sec. 406.

M. H. Owsley,                                 For Collier, Ward, &c.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

Wm. S. Pearl, having purchased of John Gill, sr., a tract of land in Garrard county, containing one hundred and fifty-seven acres and a fraction, made a parol gift of it to his son-in-law, John Gardner, who took possession; and, on the 21st of September, 1853, contracted to sell it to Alexander Lusk, at the price of twenty-seven dollars and fifty cents per acre, in three equal installments—the first to be paid the 1st of January, 1854, and the other two were payable respectively on 1st of January, 1855, and 1st of January, 1856, with interest from the 1st of January, 1854. The contract was approved by Pearl, who took the notes of Lusk for the purchase price, payable to himself, which he gave without assignment, as appears, to said Gardner, and executed to Lusk his title bond for a conveyance, with general warranty, "whenever the last payment for the land was made."

These notes were not paid off as they matured; but partial payments were made at different times, and perhaps the notes renewed. Prior to the 15th of October, 1858, the unpaid balances on the land were consolidated, and a note executed to John Gardner for the same; and on the last named day the amount due was two thousand eight hundred and sixty-one dollars and thirty-six cents, with interest, when, by some arrangement between Pearl and Gardner, the former became

the owner of the debt, and a note was executed to Pearl, " *Commissioner*," by Alexander Lusk, with Samuel Lusk as his surety, for said amount, due twelve months from date, with interest at the rate of *eight per cent. per annum.*

On the 15th of October, 1859, the note was renewed, payable to Wm. S. Pearl, commissioner, twelve months from date, which, with the interest added, amounted to three thousand and ninety dollars and twenty-six cents, and bore interest at the rate of *eight per cent. per annum.*

The note was again renewed on the 25th of March, 1861, and was made for three thousand six hundred and fifty-seven dollars and twenty-six cents, due the 15th of October, 1861, signed by A. Lusk, principal, and Samuel Lusk as surety, and payable to " Wm. S. Pearl, *as guardian for C. A. Wooley's heirs*," instead of commissioner.

On this note Pearl brought an action in ordinary, in the Garrard circuit court, on the 27th of January, 1862. Alexander Lusk, in a short time after the institution of said action, made an assignment of all his property, including the title bond on Pearl for the tract of land aforesaid, to S. Hopper, in trust for the payment of his debts, in the enumeration of which is this debt to Pearl.

At the first term of the court, after said action was brought, the Lusks answered the petition, and admitted their indebtedness as charged; but Samuel Lusk alleged that the note sued on was for the unpaid balance for the purchase price of the land, on which a lien existed in favor of Pearl for said debt, and, for the enforcement of which he (Pearl) was willing to take a judgment, instead of a personal judgment against the obligors in said note; made his answer a cross-petition against

Pearl, and prayed for a judgment to sell said land, or so much thereof as might be necessary to pay said debt, which, he alleged, A. Lusk was, otherwise, unable to pay; that the contract for the sale had never been executed; and filed the title bond of Pearl as a part of his cross-petition. Pearl, in his answer to S. Lusk's cross-petition, signed and sworn to by himself, and filed at the same term at which said cross-petition was filed, expressly admits that the note sued on was for the balance of the purchase money for the land described in the title bond filed; that he had made no deed therefor; claims that *he is entitled* to a lien on the land "until the purchase money is paid;" and prays that the same be enforced by the judgment of the court, and for other proper relief. Very soon after this answer was filed, judgment was rendered by the court for a sale of the land to satisfy the debt. In a day or two after the rendition of said judgment, Hopper, the assignee of A. Lusk, filed his petition to be made a party to the action, upon the ground that he, for the other creditors of A. Lusk, had an interest in the land, and contested the claim of Pearl to a lien on it for the payment of his debt; asked that the judgment should be set aside; and that his rights should be heard and adjudicated. Said judgment was set aside, the petition amended, and Hopper, having been made a party, in his answer denied that said debt to Pearl was the unpaid balance of the purchase money, but insisted that the whole price had been paid, and the debt to Pearl was for another and different consideration.

On final hearing, the court below adjudged that Pearl had no lien on the land, or its proceeds, for his debt on the Lusks, "but must abide his *pro rata* under the trust to Hopper;" from which judgment S. Lusk has appealed.

Appellees contend that A. Lusk borrowed the money from Pearl and paid the debt to Gardner, which he held

on the Lusks for the unpaid balance on the land, and took their note for the amount loaned, payable to himself, commissioner for A. C. Wooley's heirs, whereby the debt for the land was satisfied and the lien extinguished. Appellant controverts this theory, and insists that the debt has not been paid; that it is the same debt; and, by some arrangement between Pearl and Gardner, the former became the owner of it, and took a new note, payable to himself as commissioner.

In order to arrive at the more satisfactory solution of this question, a brief statement of the evidence bearing upon it may be indulged.

Pearl gave two depositions in the case; the first was taken February 2d, 1864, on behalf of appellee, Hopper, and, in answer to the second interrogatory propounded by S. Lusk, he answered: "I never took the note of Alex. Lusk with Samuel Lusk as security, except the note sued on, and the notes for which that is a renewal;" and to the third, he answered: "This debt originated from the sale of the Sugar Creek land. At the time the note was delivered to me by Alex. Lusk, his name was signed to it as the maker of it. Samuel Lusk's name might have been to it also, but I cannot say. I handed said note or notes over to John Gardner immediately. I do not know how much money was paid, if any. The Sugar Creek land was the land I sold to Alex. Lusk."

His second deposition was taken on the 5th of August, 1864, on behalf of Collins & Ward, creditors of A. Lusk, and in that he proves the purchase price of the land was all paid off.

The allegations of his answer to the cross-petition are not competent as evidence against appellees; but they may be referred to as corroborating the statements in the first deposition, and contradicting those of the last.

John Gardner's deposition was taken, and he proves that the debt was paid to him in the fall, 1858; that Alex. Lusk then discharged it; but he was then in Missouri. He does not say that Lusk was there, or paid it to him; but he says the money was paid to Pearl, his agent, and concludes by saying he knows nothing of his own knowledge in relation to the controversy. His statements, therefore, as he himself shows, were made upon information received from others.

Bettis states he was the son-in-law of Pearl, and his agent; that he renewed the note once or twice for him; had examined the note on which this suit was brought, and the original consideration of said note, as he understood from Pearl and the Lusks, was the land sold by Pearl to Alex. Lusk; and in both the depositions given by Alex. Lusk he states emphatically that he never borrowed any money to pay off the note held by Gardner, due 15th of October, 1858, and never paid it; but that all he did was to renew the note and make the debt payable to the party to whom the holder thereof required him to give it.

The theory of appellees, therefore, that the debt for the land has ever been paid, is not sustained by the weight of evidence; but the preponderance in any view of it is decidedly against them.

Pearl, by the assignment of the notes for the purchase money to Gardner, transferred to him his equitable lien on the land for their payment, and when he again became the holder of the debt, the equitable lien followed it in his hands, as it had neither been impaired nor extinguished. (*Edwards vs. Bohannon*, 2 *Dana*, 98; *Honore's ex'r vs. Bakewell et al.*, 6 *B. M.*, 67; *Ripperdon vs. Cozine*, 8 *B. M.*, 465.)

And as Pearl had not conveyed the land to Lusk, his lien was not extinguished by renewing the note or notes

for the unpaid part of the purchase money, with personal security. (*Rennick vs. Hendricks*, 4 *Bibb*, 303; *Honore's ex'r vs. Bakewell, &c.*, 6 *B. M.*, 67.)

But it is contended that S. Lusk has not paid the debt to Pearl; and, until he makes full payment, a court of equity will not subrogate him to the rights of the creditor. That is the rule, because, until payment is made, he is regarded as in default in respect to the creditor.

But Pearl, by his answer to the cross-petition of Lusk, asserted his lien, and prayed for the enforcement of it against the land, which he, in equity, had a right to do, and which he, in good conscience, ought to have done to exonerate the surety, especially as his principal was insolvent. Besides, A. Lusk had not acquired the legal title to the land when he made the assignment to Hopper, and Hopper took the deed with actual notice that Lusk only held an equitable interest in it, for the deed recites that he held the title bond of Pearl for a conveyance; and neither he, nor those he represents, can complain if the land should be subjected to the payment of the purchase money due to Pearl, before he or his representatives shall be compelled to part with the legal title, instead of compelling the surety to pay his debt, which must result in loss to the surety, who looked to the land for his indemnity when he signed the note, and to the benefit of the other creditors of A. Lusk, who have no legal or equitable claim on the surety. And, although S. Lusk, as surety, could not be subrogated to the lien of Pearl on the land until he had paid the debt to the creditor, still, if he had paid the debt, he would have had the right to subrogation; and, as the suit was in equity, it was proper that the chancellor should have enforced the lien to save a multiplicity of suits, and, especially, as the creditor asked that it should be done.

Wherefore, the judgment is *reversed*, and the cause remanded, with directions to apply the proceeds of the land, or enough thereof to pay the debt, to Pearl's representative, and for the distribution of the residue thereof to the payment of the other creditors of A. Lusk, *pro rata*, and for other proceedings consistent herewith.