Spath v. Hankins

| 55 | 155 |
|-----|-----|
| 158 | 320 |

## SPATH v. HANKINS.

REDEMPTION.—*Contract For.*—*Forfeiture.*—*Unconscionable Contract.*—*Vendor and Purchaser.*—*Notice.*—*Demand.*—*Parties.*—*Tender.*—*Amendment.*— On the trial of an action in the circuit court, by C. against E., to set aside certain conveyances of real estate, and allow the plaintiff to redeem the same, the findings of the facts were, that A. and B. held certain separate judgments against C., the plaintiff, the aggregate amount of which was equal to about one-eighth of the value of the real estate in controversy, upon which they were liens ; that such realty was sold, at a sheriff's sale, to B., upon an execution on his, the junior, judgment, for a sum equal to the amount of his judgment and costs, and a certificate of such purchase issued to B.; that subsequently C., taking a mortgage thereon back to himself to secure an unpaid balance of the purchase-money, sold and conveyed such land, by warranty deed, to D., and put him in possession, which he still retains; that, on the last day for the redemption of such real estate, B. assigned such certificate of purchase to A., the holder of such senior judgment, to whom C. then paid, as part of the redemption money for such realty, a certain sum of money, with the agreement that if C. paid to A. the remainder of such redemption money, and, also, the amount of such senior judgment, by a time, fixed, beyond the expiration of the time for redemption, A. would surrender such certificate and all claims on such land to C., but that, on failure by C. to make such payment he should thereby forfeit his right to redeem and also such sum already paid, to A.; that within such time, so agreed upon, A. procured a deed to himself, for such realty, from the proper sheriff, and, C. having failed to make such payment within the time fixed, A. refused to surrender such certificate or to give C. further time ; that A. subsequently entered into a written contract with E., to convey such realty, by quitclaim, to the latter, upon his paying to A. a sum equal to the amount of such judgments and costs; and that E., after the making of his contract with A., having received notice from C., that the latter had a contract with A., concerning such realty, though not of its nature, paid to A. the sum so agreed upon and received such conveyance.

*Held*, that C. retained sufficient interest in the subject-matter of the cause to bring such action.

*Held*, also, that the payment of such part of the redemption money to A., by C., within, and the making by them of such contract to allow the latter to redeem after the expiration of, the year therefor, waived the right of the former to a deed from the sheriff, and rendered such certificate merely a security in his hands for the payment of the remainder of such redemption money.

*Held*, also, that there was such disparity in the value of such land, as compared with the amount of the unpaid balance of such redemption money,

that the clause of forfeiture for non-payment is unconscionable and should not be enforced ; time not being of the essence of such contract.

*Held,* also, that the notice to E., of C.'s contract with A., was sufficient to bind him, and that C. was entitled to a judgment setting aside the sheriff's deed to A., and A.'s deed to E., and enabling C. to redeem such land on payment of such unpaid redemption money.

*Held,* also, that, to maintain such action a tender of such unpaid redemption money and a demand by C., for a reconveyance of such land, before bringing it, was not necessary.

*Held,* also, that though, on the trial of such cause, all the evidence was heard at one term, but no finding or judgment rendered, and the cause continued until the next term of such court, there was no error in permitting the plaintiff then, before the argument of the cause, to amend his complaint, so as to therein offer to pay to the defendant whatever sum the court might find due to him to enable the plaintiff to redeem.

SUPREME COURT.—*Practice.*—*Harmless Error.*—The sustaining of a demurrer to a paragraph of a pleading is not available as error, on appeal to the Supreme Court, where all the facts therein alleged were admissible and admitted, on the trial of the cause, under a remaining paragraph of such pleading.

From the Wayne Circuit Court.

*H. C. Fox,* for appellant.

*J. P. Siddall* and *T. J. Study,* for appellee.

PERKINS, J.—Complaint to set aside deed and redeem lands of the appellee, sold at sheriff's sale. The complaint contains an offer to pay whatever the court may find due, to entitle him to redeem, with all costs, etc.

Answer, the general denial, and five paragraphs in confession and avoidance. A demurrer was sustained to three of these, and overruled to two of them, and to these two, replies were filed.

We shall not consider the rulings upon the demurrers, because they are unimportant in the decision of the cause by this court. All the evidence that could have been legally given, under the paragraphs of answer held bad, was admissible, and was admitted, upon the trial of the issues made, and a special finding, completely covering the whole case, and presenting fairly every question of law arising in it, was made by the court below, and is in the record. It is as follows:

" Upon the request of both parties, that a special find-ing of the facts and conclusions of law thereon be made in writing, the court finds the facts of this case to be as follows :

" That, on and prior to January 11th 1870, the plaintiff was the owner in fee of the real estate described in the complaint. That on said day, William J. Hankins recov-ered, in the court of common pleas of said county, a judgment against the said plaintiff, for the sum of six hundred and forty-one dollars and seven cents, and costs. And, on the 14th day of July, 1870, an execution thereon was issued out of the clerk's office, of said court, to the sheriff of said county directed. That said sheriff then and there levied said execution upon said real estate, and, upon the 27th day of August, 1870, by virtue thereof, he cried off and sold the fee-simple of said real estate to said William J. Hankins, for the sum of seven hundred and twenty-two dollars and sixty-three cents, and, having re-ceived payment thereof, executed to said purchaser a cer-tificate of sale, in due form of law. That said sheriff made return of said execution, as ·stated and set forth in said complaint, which return was duly recorded in the execu-tion docket of said court, as alleged in the complaint. That, at the time of such sale, the real estate consisted of two separate tracts of land, one of one hundred and sixty acres, worth eight thousand dollars or more, the other of forty acres, worth two thousand dollars or more; the rents and profits of the former tract being worth five hundred dollars or more per year, and those of the latter one hundred and twenty-five dollars or more per year. That the said return of the sheriff upon said execution recites, among other things, that, 'On the day set for sale, I offered, at the court-house door, in Wayne county, the rents and profits of said real estate for seven years, by the year, receiving no bid therefor. I then offered the fee-simple of each of the above described pieces of real es-tate,' etc   But there is no other proof as to the way or

manner in which the rents and profits of said real estate were offered at such sale. That on Saturday, the 26th day of August, 1871, the said William J. Hankins, for a valuable consideration, sold and assigned the said sheriff's certificate of sale to George W. Calloway and George Raresheid. That said Calloway and Raresheid were the holders of certain other judgments against the said plaintiff, amounting in the aggregate to four hundred and ninety-nine dollars, which were liens and incumbrances on said real estate previous to the said Hankins' judgment.

" That, on the same day, the plaintiff notified said Calloway and Raresheid that he intended to redeem the said real estate from said sale, and thereupon, on said day, a verbal agreement was made between said plaintiff and said Calloway and Raresheid, touching the redemption of said real estate, and to the effect that he [plaintiff] should then and there pay them, on account of such redemption, the sum of four hundred dollars, and should pay the balance required to redeem said lands, to wit, three hundred and ninety-four dollars and thirty-four cents, and, also, the amount of said other judgments held by them against him, within three weeks thereafter; but if the plaintiff failed to pay said balance and the amount of said judgments within said time, then the said sum of four hundred dollars, so paid, was to be forfeited to said Calloway and Raresheid, and the plaintiff's right of redemption was to cease; and thereupon the plaintiff paid said sum of four hundred dollars to said Calloway and Raresheid. That, at the time of making such agreement, neither of said parties had any actual notice or knowledge of any defect or irregularity in the said sheriff's sale, but all of them regarded and treated said sale as regular and valid.

" That, on Saturday evening of the third week after making such agreement, the said parties met, according to previous arrangement, for the settlement of said balance, and thereupon the plaintiff notified said Calloway

and Raresheid that he had only two hundred dollars of said balance due on said balance, and could not then pay the residue, and requested them to give further time in which to pay such residue, promising to pay the same on or before the following Tuesday, but the said Calloway and Raresheid then and there refused to give further time, and stated to plaintiff, that, if he would pay the whole balance then due that night, they would turn over the certificate to him, but not otherwise; plaintiff replied that he could not do that, as he did not have the money. And the plaintiff has never since paid or tendered to said Calloway and Raresheid, or said defendant, or either of them, the said balance, or any part thereof. Nor did the plaintiff, before the commencement of this suit, demand of defendant a reconveyance of said land, or cancellation of said deed, or offer to redeem by paying any sum whatever.

"That said sheriff of said county, on the 27th day of August, 1871, executed to said Calloway and Raresheid a deed for the said real estate, pursuant to said certificate of sale, and on the 22d day of January, 1872, said Calloway and Raresheid, for the consideration of one thousand three hundred dollars, executed a quit-claim deed of said real estate to said defendant, part of which purchase-money was applied to the payment of the said judgment, so held by said Calloway and Raresheid, against said plaintiff, relieving the plaintiff and the said land therefrom.

" The defendant, at the time of contracting for said land and paying said consideration therefor, had no actual notice or knowledge of any defect or irregularity in said sheriff's sale. That in November, 1871, after the defendant had contracted, in writing, with said Calloway and Raresheid, for the purchase of said real estate, but before he had paid any part of the purchase-money therefor, the plaintiff and defendant had an interview, in which the plaintiff stated to defendant that he [plaintiff] had made

a contract with Calloway and Raresheid, and had paid them four hundred dollars on the Hankins judgment, on which they had a certificate of sale, to which defendant replied that he had purchased the farm, had made a written agreement with the parties for it, and was to have a deed when he paid them the money. And, thereupon, the plaintiff said to defendant, 'You had better keep your money. I have a contract with Raresheid and Calloway, and intend to hold them to the contract.' But none of the terms or conditions of said contract were inquired of by the defendant, or were stated by the plaintiff to defendant, and the defendant, at no time before paying said purchase-money and taking said deed, had any other notice or knowledge of the making of said contract, or payment of said money, by plaintiff, to Raresheid and Calloway.

"That the said plaintiff, on the 21st day of October, 1870, executed a deed of general warranty for the said real estate, to one Magdalena Kleiber, who then and there took possession of said real estate, and has ever since held and still holds possession thereof, and, on the 2d day of November, 1870, the said Magdalena Kleiber and John Kleiber, her husband, executed to said plaintiff a mortgage on said real estate, to secure the sum of ten thousand dollars of the purchase-money thereof, which said mortgage was duly recorded on the 1st day of February, 1871, and the same still remains unpaid and unsatisfied. That the balance remaining unpaid on said certificate of purchase, on the said 26th day of August, 1871, with the proper interest thereon to this date, amounts to the sum of four hundred and seventy-six dollars, and the said other judgments against said plaintiff, with the interest thereon, amount to six hundred and two dollars, making the aggregate the sum of one thousand and seventy-eight dollars.

"And these were all the facts involved in the case, as shown by the evidence."

The following are "the conclusions of law involved in the trial," as made in writing by the court:

"1st. That the said sheriff's sale was regular and valid, and the purchaser or his assign would have been entitled to a deed for said real estate, at the expiration of one year from the date of such sale, if no legal redemption had been made, or no agreement or transaction, changing the rights of the parties, had occurred.

"2d. That the legal effect of said agreement, made between the said Calloway and Raresheid and said plaintiff, and the payment by plaintiff of the said four hundred dollars thereunder, was to destroy the rights of the former to a conveyance under and by virtue of said sale, and to restrict their rights under said certificate of sale, to the enforcement of a lien upon said real estate, to the extent of the said unpaid balance, reserving to the plaintiff the right to redeem therefrom at any time before foreclosure, upon the payment of the said balance, with proper interest thereon. But that equity would forbid the exercise of such right of redemption, unless the plaintiff should also pay the said amount of the said judgment, which he so agreed to pay, and from which he and the said real estate were relieved.

"3d. That the defendant, before he received his deed or paid the purchase-money, had sufficient information touching such agreement and payment, to put him upon inquiry concerning the same, and he is legally chargeable with notice of the terms and conditions thereof, and that the plaintiff, therefore, has the same rights in the premises, or against the defendant, that he did have, or might have, as against the said Raresheid and Calloway.

"4th. That the said sheriff's deed ought to be set aside and held for naught, and the said real estate redeemed and free from said sheriff's sale, upon the prompt payment, by plaintiff to defendant, of the said sum of one thousand and seventy-eight dollars, in the aggregate. And,

inasmuch as no demand is shown to have been made by the plaintiff of the defendant, before the commencement of this suit, for a reconveyance of said real estate, nor any offer or tender by him of the said amount required to redeem the same, the plaintiff is not entitled to recover costs in this action."

The defendant moved for a judgment in his favor, upon the facts as found by the court, which motion was overruled. To the "decision of the court upon the questions of law involved in the trial," the defendant objected and excepted. The defendant then filed a motion for a new trial. This motion was overruled. A judgment and decree were rendered for the appellee, carrying into effect the findings of facts and conclusions of law of the court.

The merits of this case are shown by the following facts:

On the 27th of August, 1870, Alfred Hankins, the appellee, was the owner of two hundred acres of land, in Wayne county, Indiana, the lowest estimated value of which was ten thousand dollars. On that day it was encumbered by judgment liens, to the amount of about twelve hundred dollars, one of which, being the junior, was held by William J. Hankins; and on this lien, on the 27th of August, 1870, the two hundred acres of land were sold by the sheriff, to said W. J. Hankins, the judgment plaintiff, for seven hundred and twenty-two dollars and sixty-three cents, the amount of his judgment and costs, subject to prior judgment liens of five hundred dollars, less one. Said Hankins received from the sheriff a certificate of purchase.

On the 26th day of August, 1871, the last day of the year for redemption of the land, Hankins assigned his certificate of purchase to Calloway and Raresheid, the holders of the prior liens upon the land. On that day, an oral agreement was made between Calloway and Raresheid, of the one part, and Alfred Hankins, appellee, of the other part, that the latter should then and

there pay Calloway and Raresheid, on account of the re-
demption of said real estate, the sum of four hundred
dollars, and should, within three weeks, pay the balance
of the redemption money, viz., three hundred and ninety-
four dollars and thirty-four cents, and, in addition thereto,
the amount of the prior judgment liens on said land,
held by Calloway and Raresheid, viz., five hundred dollars,
both of said sums being added together, making, in the
aggregate, the sum of about nine hundred dollars; this
sum to be paid, as has been said, within three weeks, as a
condition precedent to redemption; and further, it was
made a condition in the agreement, that, if appellee failed
to pay said nine hundred dollars within the three weeks,
he should forfeit the four hundred dollars paid; and his
right to redeem the land should become extinct. Upon
this agreement, appellee paid the four hundred dollars
towards the redemption of the land, leaving about nine
hundred dollars, less than one-tenth of its value, as the
entire sum required to clear the farm of all encumbrance;
and for which small sum, if redemption failed, the
assignees of the execution plaintiff would get the farm.
But, notwithstanding this agreement for three weeks'
time for redemption, Calloway and Raresheid, within two
days after it was made, obtained a deed from the sheriff,
to the land, and subsequently conveyed the same, by a
quit-claim deed, to the appellant, Spath. At the expira-
tion of the three weeks, appellee had procured but a part
of the balance of the money required, and asked for
three days more time, but it was denied him; and, sub-
sequently, he brought this suit to redeem, and, as we
have seen, succeeded below.

In *Hughart* v. *Lenburg*, 45 Ind. 498, this court decided,
that, " Where, within the year allowed by statute for the
redemption of land sold on execution, the purchaser
accepts a part of the redemption money, on the promise
of the execution debtor to pay the residue within the
year, he waives his right to hold the land as a purchaser,

and the debtor may complete the redemption after the expiration of the year. In such case, the purchaser holds the land under the sheriff's deed merely as a security for the remainder of the redemption money."

In the case now before the court, the purchaser accepted four hundred dollars, a part of the redemption money, within the year, on the promise of the debtor to pay the residue after the expiration of the year, which, we think, makes as strong a case, if not a stronger, in favor of the debtor's right of subsequent redemption, than was created in the *Hughart* case, *supra.*

The four hundred dollars, in this, as in that, case, was paid toward the redemption of the land, and so accepted; it was paid within the year, so that the redemption was begun within the year, as in the *Hughart* case; but it is said the payment in this case was upon a special agreement, as to time of paying the balance, with the addition of all other liens, under forfeiture of all rights, on failure to pay the aggregate of such sums, at the day, etc. This is true; but the agreement was one so unconscionable that no court of equity would give effect to it; and was evidently imposed upon the appellee with the design and purpose to get from him the additional four hundred dollars and the land, while still holding the appellee personally liable to pay the amount of the judgment liens prior to the one on which the sheriff's sale took place. Taking advantage of appellee's embarrassed condition, Calloway and Raresheid made the time for redemption so short, and the amount so large, by, perhaps illegally, adding to the redemption money the five hundred dollars, then well secured on the land, that it would hardly be possible that the amount could be raised, and rendering it almost a certainty that the forfeiture must take place. That they so understood it, is evident from the fact, that, within two or three days after they had agreed to extend the time for redemption to appellee for three weeks, they

procured the sheriff's deed, upon the certificate of sale, to themselves.

We said above that the five hundred dollars of prior liens was perhaps illegally added in the contract made touching the redemption. Such consequence, perhaps, results from the fact that when a part of the redemption money is paid, the debtor has a legal right to complete the redemption afterwards, by paying, with the sum previously paid, the amount required by statute to redeem. But this we do not decide.

The obstacle supposed to be placed in the way of redemption, by the special contract, being shown to have no existence, the case falls within *Hughart* v. *Lenburg, supra*, and is governed by it. But, were that contract regarded as valid, it would present no obstacle to the redemption sought in this case, where the appellee offers now to pay the whole amount named in the contract, if required, unless time is of the essence of that contract. No circumstances indicate that time, in the equitable sense of the term, is of the essence of that contract; but it is claimed that the parties have made it so by the contract.

In *Richmond* v. *Robinson*, 12 Mich. 193, it is decided, that "time can not be made essential in a contract merely by so declaring, if it would be unconscionable to allow it" to be so. We have seen that it would be in this case. And we do not have occasion here, we may remark, to determine the question, whether that contract is void by the statute of frauds.

The bill of exceptions shows that the evidence was heard at the November term of the court, and then continued until the February term for argument. That, at the February term, immediately before the argument began, the plaintiff asked for and obtained leave to amend each paragraph of his complaint by inserting therein the following words:

"The plaintiff is ready and willing and offers to pay

the residue of said redemption money, and the balance due on said judgment in favor of William J. Hankins, and all costs and expenses connected therewith, to whomsoever may be entitled thereto; and the plaintiff also offers to pay whatever sum shall be found due from him, in order to redeem said premises, upon an account being taken by the court, or which the court shall find to be in arrears, and that he may be allowed to redeem."

The complaint contained a full statement of the facts, and prayed for the setting aside of the sheriff's deed; evidence was heard on the whole case, and we do not see that the defendant could be harmed by the amendment. It made the complaint formally, as well as substantially, sufficient. *Green* v. *Tanner*, 8 Met. 411; *Kemp* v. *Mitchell*, 36 Ind. 249.

We think the complaint, as amended, was sufficient, and that the court did not err in allowing the amendment.

We think the plaintiff is shown to have sufficient interest in the subject-matter of the suit, to entitle him to maintain it.

It seems to the court that, in the language of sec. 580, 2 R. S. 1876, p. 246, it does appear that "the merits of the cause have been fairly tried and determined in the court below," and, hence, that the judgment should not be reversed, but affirmed.

Affirmed, with costs.