Felton v. Smith et al.

No. 9378.

## FELTON v. SMITH ET AL.

| 84 | 485 |
| 124 | 591 |
| 126 | 491 |
| 127 | 265 |
| 84 | 485 |
| 129 | 225 |
| 84 | 485 |
| 131 | 291 |
| 84 | 485 |
| 136 | 392 |
| 84 | 485 |
| 137 | 654 |
| 84 | 485 |
| 143 | 619 |
| 84 | 485 |
| 144 | 438 |
| 145 | 340 |
| 84 | 485 |
| 153 | 662 |
| 84 | 485 |
| 158 | 320 |
| 84 | 485 |
| 159 | 40 |

VENDOR AND VENDEE.—Real Estate.—Contract.—Statute of Frauds.—A contract by parol for the sale of land is taken out of the statute of frauds if the vendee be put in possession under the contract, but the payment of purchase-money does not take a case out of the statute.

SAME.—Possession Under Previous Contract.—Possession taken under a prior contract, and merely continued under the oral contract relied on, will not take the latter out of the operation of the statute of frauds.

SAME.—Vendor's Lien.—Assignment of Notes.—The assignment of notes for the purchase-money of land transfers, as an incident, the vendor's lien which the payee had when the assignment was made.

SAME.—Waiver.—Security.—Married Woman.—As a rule a vendor's lien is waived by the acceptance of other security, but such a lien is not waived by the acceptance of a married woman as surety upon notes executed prior to the act of 1879 in relation to married women.

SAME.—Vendor Trustee for Assignee of Notes.—Where the vendor of real estate retains the legal title thereof, but assigns the notes executed for the unpaid purchase-money, he becomes the trustee for his assignee, that is, holds the land for the purpose of securing the debt transferred to his assignee.

SAME.—Collateral Security.—Parties.—Where the owner of a promissory note assigns it as collateral security, he can not maintain an action thereon while it is held by his creditor.

SAME.—Tender of Deed.—Instruction.—Evidence.—Where, in a suit to enforce a vendor's lien for purchase-money, the evidence shows that a conveyance had been made to the vendee, it is error to instruct the jury that the suit must fail because no deed had been tendered by the vendor.

SHERIFF'S SALE.—Certificate of.—Title.—Deed.—A purchaser at a sheriff's sale of real estate must have, in addition to the sheriff's certificate, for the completion of his title, a deed therefor from the sheriff.

SAME.—Contract.—Relation.—Doctrine of.—The fiction of relation is allowed force when equity requires that the last of a series of acts shall be referred to the first; but it is never allowed when it would produce an inequitable result.

SAME.—Redemption.—Waiver.—Agreement.—A purchaser at a sheriff's sale, who, during the year for redemption, accepts part payment of the debt, or takes notes giving time for payment beyond the year, agreeing not to take a sheriff's deed, waives his right to such deed, and will not acquire title by afterwards taking it in violation of his agreement.

From the Montgomery Circuit Court.

G. W. Paul and J. E. Humphries, for appellant.

E. C. Snyder and M. W. Bruner, for appellees.

ELLIOTT, J.—The case made by the appellant's complaint is, in brief, this: In June, 1878, Simeon Krout and Mary Krout executed to John H. Smith, the appellee, four promissory notes; these notes were assigned to the appellant; the notes were executed to secure the unpaid purchase-money for real estate sold by the appellee to the makers; the contract of sale was a verbal one, and under it the purchasers were put into possession and paid in property the purchase-money in excess of the sum evidenced by the notes, namely, $1,000; no deed was executed for the land to the purchaser; Krout and wife have died since the execution of the notes, and the appellee has only the legal title, and has no beneficial interest in the land. The complaint prays that appellant be declared entitled to have and enforce a vendor's lien.

The heirs of Mr. and Mrs. Krout were made parties, but they make no opposition to appellant's claim, and the real contest seems to be between Smith and the appellant.

The second paragraph of Smith's answer alleges, that he is and has been the owner of the land since 1877, and that he has never conveyed it to any person. This answer is bad. It confesses the averment of the complaint that an oral contract was made for the sale of the land and the vendees put in possession under it. It is a familiar principle that where a vendee is put in possession under a verbal contract, there is such part performance as takes the case out of the statute.

Smith transferred all his rights to his assignee by the assignment of the notes executed for the purchase-money. The lien is, it is true, an equitable one, but it passes by the assignment of the debt which it secures, just as a mortgage passes by the assignment of the notes which it was executed to secure. Nichols v. Glover, 41 Ind. 24; Kern v. Hazlerigg, 11 Ind. 443; Wiseman v. Hutchinson, 20 Ind. 40. If the appellee Smith had any right in the land as security for his

lien, that right passed to his assignee. If there was an en-forceable contract, the assignee has a right to avail himself of it for the purpose of making good his lien.

The third paragraph of Smith's answer alleges, that, prior to the time the oral agreement mentioned in the complaint was entered into, the appellee had sold and by deed conveyed the land to Simeon Krout and William Whiteacre; that he re-ceived from them for the unpaid purchase-money a mortgage, which was foreclosed by a decree entered on the 24th day of March, 1877; that on this decree a sale was made and the land purchased by Smith, but no deed was taken out until December, 1879, long after the oral agreement had been made with Krout for the sale of the land. The allegations of the complaint concerning the verbal contract and possession under it are not controverted, and are, therefore, confessed.

We regard this paragraph as subject to the same objections as those stated to the former, for it confesses the existence of an oral contract of sale, and that possession was given and accepted under it. The appellee Smith rests under a double moral obligation: the one arising out of his contract with his vendees and the receipt of money under it, and the other springing from his contract of assignment; and he ought not to be allowed to encompass the defeat of his assignee without a clear showing of legal right.

A purchaser at sheriff's sale requires for the completion of his title a deed from the sheriff. *State, ex rel.,* v. *Sherill,* 34 Ind. 57; *Davis* v. *Langsdale,* 41 Ind. 399; *Hasselman* v. *Lowe,* 70 Ind. 414; *Greene* v. *Doane,* 57 Ind. 186; *Bodine* v. *Moore,* 18 N. Y. 347; *Neff* v. *Hagaman,* 78 Ind. 57. A sheriff's sale without a deed conveys no title. *Goss* v. *Mead-ors,* 78 Ind. 528. When the oral agreement of sale was made, in June, 1878, the appellee had, under his sale made in 1877, a mere lien, for, as said in *State, ex rel.,* v. *Sherill,* "The sheriff's deed is the vehicle which conveys the title to the purchaser," and he should not, by afterwards taking out a sheriff's deed, render nugatory the verbal agreement with his vendees. If

he had nothing more than a lien when he made the oral contract, he could not afterwards make that lien a title which would crush intermediate rights created by himself. It is settled that an agreement extending the time of redemption, made during the year, is valid, and will prevent the purchaser at the sheriff's sale from acquiring a title under his sale. *Spath* v. *Hankins*, 55 Ind. 155; *Hughart* v. *Lenburg*, 45 Ind. 498. The principle underlying the cases cited controls the present; for the appellee having made an oral contract, changing his right to a deed under his sale into one altogether different, can not equitably claim remission to his original position. The certificate of the sheriff was really annulled by the subsequent agreement; but, if it was not, then, under the cases cited, it remained a mere security. This latter conclusion is the most favorable to appellee that can be possibly imagined, and it would result in condemning his answer. We think, however, that it is one which can not be sustained, for the reason that the new contract, with the acceptance of the $1,000 and the four notes, operated as an extinguishment of. the lien.

The case in hand is entirely unlike that of *Rucker* v. *Steelman*, 73 Ind. 396, for there the title of the purchaser was vested and complete. It was there said: "The sale and conveyance by the sheriff extinguished all the rights of the appellant and vested an absolute title in King." Here there was no conveyance, and Smith, the purchaser at the sheriff's sale, treated his rights as those of a mere lienor, for he did not attempt to perfect his inchoate right until after he had made the oral agreement which, in effect, divested him of all interest therein. Having made this agreement while there was no title in him, and while he held a mere lien, he can not, by an act subsequently performed, make for himself a title strong enough to wrest the property from both his vendee and his assignee. If Smith had not disabled himself from taking a deed, then, perhaps, the sheriff's sale would not have been invalidated by a delay beyond the year. *Jones* v. *Kokomo, etc., Ass'n*, 77

Ind. 340. But the question here is, whether he is entitled to a deed at all, and we are not required to decide whether mere delay will bar the purchaser's right to demand a deed.

The doctrine of relation is invoked, but it will lend the appellee no support. The fiction of relation is allowed force when equity requires that the last of a series of acts shall be carried back to the first or original act, for the purpose of shutting out intervening claims. In no case is it allowed force where the party insisting upon it is endeavoring to se-cure an unconscionable result. It is obvious that it can have no application to a case like this, where the party invoking it seeks to make it the instrument of overturning a verbal con-tract under which he has received things of great value. With much more reason might the doctrine be appealed to by his vendees, for it would be then turned to an equitable purpose.

The fourth paragraph avers that the appellee, at the time he made the oral contract, waived his lien by accepting Mary H. Krout as surety on the notes described in the complaint. It is a familiar general rule that a vendor waives his lien by accepting security. The appellant concedes this to be the general rule, but claims that as the complaint shows that Mary H. Krout was a married woman, her undertaking as surety was absolutely void, and that, therefore, his assignor did not acquire any security. It is true, that under our law, as it stood in 1878, the contract of suretyship entered into by a married woman was void. *Brick* v. *Scott*, 47 Ind. 299. As Mrs. Krout's contract was void, the appellant's assignor did not obtain any valid security, and the case is, therefore, carried out of the operation of the general rule.

Where the thing offered and accepted as security is void, there is no consideration supporting the claim of waiver, and a vendor should not be treated as having waived a valuable right without having received some consideration ; nor can it be justly held that there is a waiver, where the vendor, acting upon the faith that he gets some security, gets none at all.

There are cases illustrating this general doctrine. In *Fouch* v. *Wilson,* 60 Ind. 64 (28 Am. R. 65), the vendor accepted a mortgage which was afterwards discovered to be a forged one, and it was held that he had not waived his lien. In *Madden* v. *Barnes,* 45 Wis. 135 (30 Am. R. 703), the vendor accepted a check which turned out to be worthless, and it was held that the lien was not waived. In *Lord* v. *Jones,* 24 Me. 439, it was held that a lien on personal property was not waived by accepting property which the person delivering did not own. The case of *Duke* v. *Balme,* 16 Minn. 306, holds that a lien is not waived by the acceptance of land warrants in payment, where there was a forged assignment. In Iowa it is held that if the vendor is induced to accept the thing in payment by fraudulent representations concerning its character and value, he does not waive his equitable lien. The court said: "It is just the same as if he had been paid this amount in counterfeit or worthless bills. There would be a semblance of payment, but none in reality; and if none in reality, then none in equity." *McDole* v. *Purdy,* 23 Iowa, 277. The principles enforced in the cases cited are in harmony with our own cases of *Martin* v. *Cauble,* 72 Ind. 67, and *Humphrey* v. *Thorn,* 63 Ind. 296.

We think that the fifth paragraph of the answer is sufficient. It shows that the appellant assigned and delivered the notes to Smith as collateral security; that he has not performed the act for which he assigned them as security; and that they are still held by Smith. These facts show that the appellant is not the real party in interest. Pomeroy Rem., section 132; *Jones* v. *Hawkins,* 17 Ind. 550; *Rowe* v. *Haines,* 15 Ind. 445. It has long been the rule in this State, that the defence that the plaintiff is not the real party in interest must be specially pleaded. *Lamson* v. *Falls,* 6 Ind. 309; *Swift* v. *Ellsworth,* 10 Ind. 205; *Hereth* v. *Smith,* 33 Ind. 514; *Garrison* v. *Clark,* 11 Ind. 369.

The sixth paragraph of the answer alleges that the appellee is the owner of the land; that he has not conveyed, and that

the purchaser under the oral contract has not been put in possession. This answer presents a question not directly presented in any of the other paragraphs. As it is shown that there was a mere oral agreement, and no possession given under it, the case is not taken out of the statute upon the ground of part performance. It has been time and time again decided that payment of the purchase-money will not take a case out of the statute.

Where a vendor retains the legal title and assigns notes executed for unpaid purchase-money, he becomes the trustee for his assignee; that is, he holds the land for the purpose of securing the debt transferred to his assignee. In *Amory* v. *Reilly*, 9 Ind. 490, it was said: " Where the original vendor has not parted with the legal title, it must be intended that he holds it as security for unpaid purchase-money; and all the incidents of a mortgage, so far as the lien is concerned, attach to the contract of sale." The case of *McCaslin* v. *State, ex rel.*, 44 Ind. 151, approves this doctrine. On principle, it is plain that a vendor, assigning the debt for which he holds the legal title as security, transfers the security, and so the cases declare. *Church* v. *Smith*, 39 Wis. 492; *Hadley* v. *Nash*, 69 N. C. 162; *Roper* v. *McCook*, 7 Ala. 318; *Smith* v. *Robinson*, 13 Ark. 533; *Lusk* v. *Hopper*, 3 Bush (Ky.) 179.

The rule stated does not, however, meet such a case as this, for the question here is as to whether the vendor ever made an enforceable contract. If he made no such contract, then he retained more than a mere naked legal title—the whole ownership remained in him. If the ownership remained in him, then there is no title in the vendee upon which the equitable lien can fasten.

It is true, as counsel for appellant contend, that a vendor may enforce the payment of the purchase-money, where he tenders performance of an oral contract for the sale of lands. This principle is distinctly declared by our own cases. *Arnold* v. *Stephenson*, 79 Ind. 126; *Humphrey* v. *Fair*, 79 Ind. 410; *Tinkler* v. *Swaynie*, 71 Ind. 562; *Reyman* v. *Mosher*, 71 Ind.

Felton *v.* Smith *et al.*

596; *Schenck* v. *Sithoff*, 75 Ind. 485. But these cases are not like the one at bar; here the vendor repudiates his oral contract, and thus prevents the acquisition of title by his vendees. Instead of tendering performance, he casts himself upon the statute and demands the benefit of its provisions.

It is an established rule that the statute of frauds can not be made the instrument of fraud. But the fraud which will defeat the operation of the statute must be something more than the moral wrong of repudiating a contract fairly entered into, and whose only infirmity is that it is not evidenced by a writing. There must, in order to escape from the statute, be some fraud shown; if it were otherwise the statute would be without force. In this case there are two elements which may, perhaps, be considered as tending to prove that it is inequitable for the appellee Smith to interpose the statute. The first is that he has received property and notes in payment of the purchase-money, but this is not sufficient, for few rules are better settled than that payment of the purchase-money will not take a case out of the statute. The second is, that the appellant is Smith's assignee; but it does not appear that the notes were taken upon the faith that a vendor's lien existed for their security, and it is not claimed that Smith made any representations upon this subject. There is nothing to show that the appellant was promised or expected a vendor's lien. The pleadings show that the notes were assigned to him in the ordinary course of business; and, in the absence of some showing to the contrary, the presumption is that he received them, relying upon the personal liability and solvency of the makers and the assignor. At all events, there is no element of fraud that will take the case out of the statute, for nothing more is presented to us by the complaint and this answer than the case of a vendor seeking to avail himself of the statute against the assignee of notes executed for the purchase-money of land which he had orally agreed to convey. If there had been any representations by the vendor as to the security or any like matters, we should

have had an entirely different case. We think the paragraph of the answer under immediate mention must be held good.

The evidence did not show that the vendees of the appellee Smith were put in possession under the oral contract; it showed that they were in possession under the deed made prior to the decree of foreclosure, and that they continued in possession. A mere continuous possession, taken under a contract made prior to the oral one relied on, will not carry a case out of the statute of frauds. *Judy* v. *Gilbert,* 77 Ind. 96 (40 Am. R. 289); *Railsback* v. *Walke,* 81 Ind. 409.

The appellant put in evidence the deed of Smith to Krout and Whiteacre, the mortgage executed by them to Smith, the proceeding in the foreclosure suit against them, the sheriff's sale and deed, the notes sued on, the assignment, and made proof of the oral agreement. The appellee Smith testified that he took the notes in suit from Krout, received from him a deed for forty acres of land, and, to use his own words, "agreed to cancel or satisfy Krout's indebtedness to me, to the extent of $1,000; at that time nothing was said about the trade afterwards made in June, 1878." When the forty-acre tract of land was accepted in part payment, the year of redemption had not expired. The second agreement between the parties, that of June, 1878, in pursuance of which the notes in suit were executed, was, as Smith states it, that he should take the notes and give Krout time. Smith also testified that Whiteacre at the time conveyed to Krout, so that Krout then had the whole title, subject only to Smith's claim.

The court instructed the jury as follows: "I am satisfied that no vendor's lien exists in this case, because the legal title was not conveyed by Smith to Krout, and no equitable mortgage can exist, because the contract was not in writing, and there was no memorandum signed by Smith, and no valuable and lasting improvements made. I think it is clear that if Smith was prosecuting this action he would have to tender a deed, and as there is no tender of conveyance alleged or

proved in this case, the action must fail, and I, therefore, in-- struct the jury to find for the defendants."

We are clear that this instruction was erroneous.

When the contract of June, 1878, was made, Krout owned and had title to the land by deed from Smith, jointly with Whiteacre, and when the latter conveyed to him he became the owner of the entire interest and title. It was not necessary, therefore, for Smith to make him a conveyance. The only interest Smith had was a lien existing by virtue of his sher- iff's sale, and this, as he himself testifies, he had agreed to cancel at the time he received Krout's notes and made the oral agreement. Krout, therefore, owned the land subject only to Smith's lien, and needed no conveyance to vest him with title. It is very plain that so much of the instruction as assumes that a deed was necessary to vest title in Krout is erroneous.

There are at least three reasons why Smith could not, and did not, acquire title by the sheriff's deed delivered to him after the agreement of June, 1878. The first is, that he had, before the year of redemption had expired, accepted forty acres of land valued at $1,000, in part payment of his lien, and by this act he deprived himself of a right to take out a sheriff's deed. *Spath* v. *Hankins, supra ;* *Hughart* v. *Lenburg, supra.*

The second reason is, that the oral agreement precluded Smith from acquiring title under a lien which he swears he had agreed to cancel. A verbal agreement, founded upon a valuable consideration, to satisfy a lien is valid and in no wise affected by the statute of frauds.

The third reason is, that having made the oral agreement to give his debtor four years' time to pay the lien existing in his favor, he is estopped, after having received full consider- ation, to repudiate that agreement and take out a sheriff's deed in direct violation of its terms. The fundamental error of the trial court was in assuming that the sheriff's sale, with- out being perfected by a deed, vested title in Smith from the day of sale.

Whatever rights Smith had in the land passed by the as-

signment of the notes; for when they passed from him the last vestige of his interest was gone. It is quite clear that the only interest Smith had in the land was that represented by the notes which. he received under the oral contract of June, 1878, and when he vested the right to the notes in his assignee he conferred all his interest in the land. In *Bills* v. *Mason*, 42 Iowa, 329, it was said: "The principal thing is the debt, the lien is an incident and the principal one that attaches to it. If, then, the debt and the principal incident passes to the assignee, why not all other equities and rights. The fact that in *Blair* v. *Marsh*, 8 Iowa, 144, the vendor had not parted with the title of the real estate, can make no difference for the reason that the mode of enforcing the lien, or the rights of the parties, are in no wise different from what they would have been if the title had passed to the vendee." *St. Peter's Lit. Association* v. *Webb*, 31 Ark. 140, decides that the assignment of notes representing the purchase-money vests in the assignee all the rights and equities of the assignor, and enables him to resort to the land for the payment of the debt. The Court of Appeals of Kentucky, speaking of the rights of the assignee of purchase-money notes, said: " Lewis occupies the same, or at least as favorable, a position as the assignors of his note on Johnson would if they had continued to own it." In the strongly reasoned case of *McClintic* v. *Wise's Adm'r*, 25 Grat. 448 (18 Am. R. 694), it was said: "The assignee having by the assignment acquired the benefit of the lien, whatever it may be, is entitled to all the remedies of the vendor to enforce it." In the case of *Cummings* v. *Oglesby*, 50 Miss. 153, the same general principle is enforced, and the court declared that equity will not permit an assignor to set up any claim or do any act which will impair the rights of the assignee. The case of *Kimbrough* v. *Curtis*, 50 Miss. 117, holds a doctrine in harmony with that of the cases cited, and declares that the fact that no deed was tendered did not defeat the action, "for the title did not reside in the complainant, and he could only reap the benefit of his equity by demanding that the parties to

the contract of sale shall be held to the performance of their respective covenants."

The vendees of Smith have in equity no right to hold the land without payment of the purchase-money; nor, it is only just to add, are they seeking to do so, and the person holding the claim for the purchase-money is entitled to resort to the land for the security of his claim.   It is a familiar rule that a change in the evidence of a debt will not release a mortgage as long as the debt is unpaid, and this rule must extend to vendors' liens, which are really equitable mortgages.   The whole doctrine of equitable liens for purchase-money rests upon the principle that a man can not hold, as against his vendor, land which he has not paid for; and in the case before us it is plain that the purchase-money is unpaid.   There has been a change in the form of the evidence, but this, in equity, is of little consequence; for " equity looks through form to substance."   The notes held by the appellant represent the unpaid purchase-money due upon the land, and he has a right to hold the land; and his assignor, of all persons in the world, is the one having the least show of right to stand between him and the enforcement of his equitable lien.

Judgment reversed.